**VAUGHN INDUSTRIES, INC., Appellee,**

v.

**DIMECH SERVICES et al.; Shambaugh & Son, L.P., Appellant.**

[Cite as *Vaughn Industries, Inc. v. Dimech Servs.*,
167 Ohio App.3d 634, 2006-Ohio-3381.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–05–039.

Decided June 30, 2006.

---

636

Alan G. Ross and David T. Andrews, for appellee.

Joseph M. D'Angelo, for appellant.

PIETRYKOWSKI, Judge.

{¶ 1} This case is before the court on appeal from a judgment of the Wood County Court of Common Pleas, which granted in part the summary judgment motion of plaintiff-appellee, Vaughn Industries, Inc. ("Vaughn"), in its action against defendant-appellant, Shambaugh & Son, L.P. ("Shambaugh"). In granting the motion in part, the court entered judgment in favor of Vaughn and against Shambaugh with respect to Vaughn's claim for violations of the prevailing-wage law. Specifically, the court held that Shambaugh violated R.C. 4115.05 by allowing apprentices to work for it in excess of the allowable ratio of apprentices to skilled workers and violated R.C. 4115.071 by failing to prepare certified payroll reports in accordance with the regulations of the Ohio Administrative Code. In denying the motion in part, the court held that Shambaugh did not intentionally commit the violations of the prevailing-wage law. The court further ordered Shambaugh to pay $24,110 toward Vaughn's attorney fees. Shambaugh now challenges the trial court's judgment through the following assignments of error:

{¶ 2} "1. The trial court committed reversible error when it substituted its judgment for that of the agency charged with enforcing the prevailing wage law by failing to defer to O.A.C. 4101:9–4–16(H) regarding the meaning of 'allowable ratio' of apprentices to journeymen.

{¶ 3} "2. The trial court committed reversible error when it held that Shambaugh & Son, L.P. violated R.C. 4115.071(C) by submitting certified payroll reports containing an affirmation of payment of the scheduled fringe benefit rates set forth in the applicable prevailing wage determination because Shambaugh is signatory to the collective bargaining agreement from which the scheduled fringe benefit rates are derived.

{¶ 4} "3. The trial court committed reversible error when it awarded Vaughn its attorney's fees against Shambaugh & Son, L.P."

{¶ 5} The undisputed facts of this case are as follows. On July 31, 2000, Bowling Green State University ("BGSU"), a public institution, began accepting bids for contract work on the BGSU student-union project. Vaughn and Dimech Services both submitted bids for the prime mechanical/heating, ventilating, and air conditioning contract for the project. Dimech was awarded that contract and subcontracted the fire suppression/sprinkler work to Shambaugh. Shambaugh is a signatory to a collective bargaining agreement ("the CBA") between the National Fire Sprinkler Association, Inc. and the Road Sprinkler Fitters Local Union No. 669. Article 16 of the CBA addresses the issue of the ratio of apprentices to journeymen and reads: "Employers employing Apprentices under the terms and conditions of this Amendment shall be allowed one (1) Apprentice to the first Journeyman and one (1) Apprentice to each Journeyman thereafter. No Apprentice may be employed on a job where there are no Journeymen employed."

{¶ 6} In September 2002, Vaughn filed a complaint with the Ohio Department of Commerce that alleged that Shambaugh had violated the prevailing-wage laws in Ohio by failing to pay employees working on the project the prevailing wage and benefits, misclassifying employees, and failing to maintain the required journeyman-to-apprentice ratio. The director of commerce did not rule on the merits of the complaint within 60 days of its filing, and so, pursuant to R.C. 4115.16(B), Vaughn was authorized to pursue its action in common pleas court.

{¶ 7} On January 27, 2003, Vaughn filed a complaint in the Wood County Court of Common Pleas against Dimech Services and six of its subcontractors involved in the project, including Shambaugh. Vaughn filed the complaint pursuant to R.C. 4115.16, alleging violations of Ohio's prevailing-wage law. Vaughn alleged that Shambaugh violated Ohio's prevailing-wage law while working on the project by failing to maintain the required journeyman-to-apprentice ratio at the worksite and by failing to prepare certified payroll reports enumerating each employee's fringe-benefit payments. Vaughn further alleged that Shambaugh's violations of the prevailing-wage law were intentional in that Shambaugh knowingly submitted incomplete or erroneous certified payroll reports, intentionally misclassified employees as apprentices rather than journeymen for the purpose of reducing their wages, and intentionally failed to comply with the allowable ratio of apprentices to skilled workers. Vaughn then sought against Shambaugh and the other defendants declaratory and injunctive relief, restitution to the affected employees in the form of back pay and statutory penalties, and attorney fees and costs.

{¶ 8} On September 15, 2004, both Shambaugh and Vaughn filed motions for summary judgment in the court below. Vaughn asserted that as a matter of law, Shambaugh was required to maintain a journeyman-to-apprentice ratio of one-to-one on the project worksite at all times, that Shambaugh failed to maintain that

ratio, and that therefore it violated Ohio's prevailing-wage law by effectively paying apprenticeship wages and benefits to employees who would otherwise be earning journeyman-scale wages and benefits. Vaughn further asserted that as a union-signatory contractor with over 1,000 employees, some of whom have participated as members of the Joint Apprenticeship Training Committee, Shambaugh cannot plead ignorance of the ratio requirements, and so Shambaugh's violations must be seen as intentional, not accidental. Next, Vaughn argued that Shambaugh violated the prevailing-wage law by failing to itemize in its certified payroll reports the fringe-benefit payments made on behalf of each employee. Rather, Vaughn asserted, the payroll reports simply listed the employee's base pay and deductions for various state and federal taxes, and then included a category marked "Union DED." Because Shambaugh did not document where the "Union DED" monies were allocated, Vaughn asserted that there was no way to assure that the proper contributions were being made to bona fide plans or programs. Vaughn further asked the court to determine whether the statements of compliance prepared by Kim Pedersen, Shambaugh's payroll officer, and attached to the certified payroll reports for the period in question, constituted compliance with the requirements of R.C. 4115.071(C). On the statements of compliance, Pedersen put an "X" next to the paragraph that reads: "In addition to the basic hourly wage rates paid to each laborer or mechanic listed in the above referenced payroll, payments of fringe benefits as listed in the contract have been or will be made to appropriate programs for the benefit of such employees, except as noted in Section 4(c) below." Finally, Vaughn argued that because the undisputed facts demonstrated that Shambaugh had violated sections of Ohio's prevailing-wage law, Vaughn was entitled to an award of attorney fees and costs pursuant to R.C. 4115.16(D).

{¶ 9} In its motion for summary judgment and memorandum in opposition to Vaughn's summary judgment motion, Shambaugh asserted that it had complied with the ratio requirements of the statutes and collective-bargaining agreement by maintaining a company-wide or shop ratio of journeyman to apprentices of one-to-one. With regard to the alleged violations of R.C. 4115.071(C), Shambaugh asserted that Pedersen's affirmations on the statements of compliance were undisputed evidence that Shambaugh accurately completed the certified payroll reports. Shambaugh also asked to be awarded attorney fees and costs.

{¶ 10} On November 18, 2004, the lower court issued a judgment entry on all of the pending cross-motions for summary judgment. Relevant to the current appeal, the court granted in part and denied in part Vaughn's summary judgment motion against Shambaugh. The court then stated that a full opinion would be filed at a later date and granted Vaughn 14 days to file its application for attorney fees. Vaughn filed a timely application for attorney fees and costs, to

which Shambaugh filed objections. On December 13, 2004, the court issued its full opinion on the motions for summary judgment. With regard to the ratio issue, the court held that the prevailing-wage statute was ambiguous, and therefore, the court was required to look to the intent of the legislature. The court then held upon review of the statutes, the interpretation of the statutes by the Ohio Administrative Code, the purpose of the statutes as stated by the Supreme Court of Ohio, and the policy reasons underlying apprentice provisions that the journeyman-to-apprentice ratio set forth in the prevailing-wage law necessarily applied to the job site. With regard to Vaughn's claim that Shambaugh failed to properly complete the certified payroll reports, the court held that Shambaugh's failure to itemize the deductions being made from the employees' wages constituted a violation of the prevailing-wage law. In particular, the court held that certified payroll reports must be sufficient in substance and form to assure proper payment of employees' wages and benefits and that Shambaugh's failure to specify the benefit payments constituted a violation of the statute. The court further determined, however, that there was no evidence that Shambaugh's violations of the prevailing-wage laws were intentional and so effectively granted Shambaugh summary judgment on that claim. Finally, on May 3, 2005, the lower court issued an opinion and order on Vaughn's claim for attorney fees and costs. The court held that an award of attorney fees and costs was mandated by statute and, as against Shambaugh, awarded Vaughn $24,110 in attorney fees and $1,906.32 in costs. By ruling on Vaughn's claim for attorney fees and costs, the lower court had ruled on all pending claims, and the court's judgment became final and appealable. Shambaugh now challenges the trial court's judgment as follows.

{¶ 11} Shambaugh's first and second assignments of error challenge various aspects of the lower court's order granting summary judgment; accordingly, we will apply the same standard of review to our discussion of those issues. Appellate review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 12} Shambaugh's first assignment of error addresses Vaughn's claim that Shambaugh violated the prevailing-wage law by failing to maintain a one-to-one journeyman-to-apprentice ratio on the project jobsite. It is undisputed that Shambaugh did not maintain a one-to-one ratio on the project jobsite. Nevertheless, Shambaugh asserts that because its company-wide or shop ratio was

generally three journeymen to every one apprentice during the period of time during which it worked on the student-union project, it was in full compliance with the CBA and Ohio's prevailing-wage laws. Vaughn counters that Ohio's prevailing wage laws do not allow a journeyman-to-apprentice ratio to be calculated using journeymen not actually on the site where the apprentices are working and so, as a matter of law, Shambaugh was in violation of the prevailing-wage laws during the time in which it worked on the project.

{¶ 13} Ohio's prevailing-wage laws are set forth in R.C. 4115.03 to 4115.16. R.C. 4115.12 provides that in order to facilitate the administration of the prevailing-wage laws "and to achieve the purposes of those sections, the director of commerce may adopt reasonable rules, not inconsistent with those sections, for contractors and subcontractors engaged in the construction, prosecution, completion, or repair of a public improvement financed in whole or in part by any public authority." Those rules adopted by the director of commerce are set forth in the Ohio Administrative Code. Because they serve to augment the prevailing-wage laws set forth in the Revised Code, they must be considered when we evaluate a claim of prevailing-wage law violation.

{¶ 14} R.C. 4115.05 provides that the prevailing rate of wages to be paid to laborers, workers or mechanics on a public work shall not be less "than the prevailing rate of wages then payable in the same trade or occupation in the locality where such public work is being performed, under collective bargaining agreements or understandings, between employers and bona fide organizations of labor in force at the date the contract for the public work * * * was made * * *." That statute then addresses the issue of apprentices and states:

{¶ 15} "Apprentices will be permitted to work only under a bona fide apprenticeship program if such program exists and is registered with the Ohio apprenticeship council.

{¶ 16} "The allowable ratio of apprentices to skilled workers permitted to work shall not be greater than the ratio allowed the contractor or subcontractor in the collective bargaining agreement or understanding referred to in this section under which the work is being performed."

{¶ 17} Ohio Adm.Code 4101:9–4–16 amplifies R.C. 4115.05 and reads:

{¶ 18} "(B) Apprentices may be categorized in their particular trades, and paid less than the prevailing rates of wages for qualified laborers, workmen, or mechanics in such particular trades, only if there is in force at the time work is being performed under a contract for the public improvement project, in the locality of such project, a collective bargaining agreement or understanding between employers and bona fide organizations of labor which authorizes the employment of apprentices.

{¶ 19} " * * *

{¶ 20} "(H) Ratios of apprentices to skilled workers may not exceed the allowable ratio contained in the prevailing wage schedule. The allowable ratio of apprentices to skilled workers set forth in the prevailing wage schedule shall be the ratio of apprentices to skilled workers in the collective bargaining agreement applicable to the locality of the project. If a contractor or subcontractor has employed apprentices in excess of the allowable ratio contained in the prevailing wage schedule, all such apprentices are considered to have been improperly classified and will be entitled to an equitable share of the total of the wages which would have been paid had such employees been properly classified. For purposes of ratios, a working foreman, supervisor, or owner may be counted as a laborer, workman, or mechanic; however, if an employer has miscategorized any employee, including a working foreman, supervisor or owner, or utilized an excessive number of apprentices, such employees cannot be counted as laborers, workmen, or mechanics for ratio purposes."

{¶ 21} Accordingly, both the Revised Code and the Ohio Administrative Code direct all parties to consult the collective-bargaining agreement applicable to the locality of the public project to determine the allowable ratio of apprentices to skilled workers on that project. As noted above, the CBA applicable to the student-union project provides at Article 16: "Employers employing Apprentices under the terms and conditions of this Amendment shall be allowed one (1) Apprentice to the first Journeyman and one (1) Apprentice to each Journeyman thereafter. No Apprentice may be employed on a job where there are no Journeymen employed." Nothing in the CBA or in the statutes or rules in question, however, defines whether the ratio of journeymen to apprentices referred to must be maintained on the public project worksite or in the company at large. That is the question presented by the first assignment of error.

{¶ 22} It is well settled that in analyzing a statute or regulation, the paramount goal is to ascertain and give effect to the legislature's intent in enacting the statute. *Brooks v. Ohio State Univ.* (1996), 111 Ohio App.3d 342, 349, 676 N.E.2d 162. The Supreme Court of Ohio has consistently held that "[a]bove all else, the primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector." *State ex rel. Evans v. Moore* (1982), 69 Ohio St.2d 88, 91, 23 O.O.3d 145, 431 N.E.2d 311.

{¶ 23} If the language used in a statute is clear and unambiguous, the statutes and regulations must be applied as written, and no further interpretation is necessary. *Columbus & Franklin Cty. Metro. Park Dist. v. Shank* (1992), 65 Ohio St.3d 86, 103, 600 N.E.2d 1042. "Conversely, where uncertainty exists regarding legislative or administrative intent in the drafting of a statute or

regulation, all rules of construction are available to assist a reviewing court." Id. at fn. 17. Moreover, statutes and regulations that relate to the same general subject matter must be read in pari materia, and, in construing them together, a "court must give such a reasonable construction as to give the proper force and effect to each an all such statutes [and regulations]." *Johnson's Markets, Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, 35–36, 567 N.E.2d 1018.

{¶ 24} The language used in the statutes and regulations in question leads us to conclude that the only reasonable answer to the question before us is that, while working on the publicly funded construction project at Bowling Green State University, Shambaugh was required to maintain a one-to-one ratio of journeymen to apprentices on the job site. By its very nature, Ohio's prevailing-wage law exists to determine the prevailing rate of wages in a particular industry at a specific location, i.e., jobsite. R.C. 4115.04(A). The prevailing rate of wages for a specific jobsite is then set forth in a prevailing-wage-rate schedule that is posted at the job site. Id. That schedule is to include the ratio of apprentices to skilled workers allowed on the job site. Ohio Adm.Code 4101:9–4–16(H). R.C. 4115.05 and Ohio Adm.Code 4101:9–4–16(H) provide that the allowable ratio of apprentices to journeymen "shall not be greater than" and "shall not exceed" the ratio of apprentices to skilled workers in the applicable collective-bargaining agreement. The CBA applicable to the present case provides that employers shall be allowed "one (1) Apprentice to the first Journeyman and one (1) Apprentice to each Journeyman thereafter." Accordingly, this is the ratio that applies to the job sites that fall under the prevailing-wage law. Read another way, when working on public projects funded by public money in the state of Ohio, Shambaugh can employ one apprentice to the first journeyman on the jobsite and no more than one apprentice to each journeyman thereafter. Indeed, the prevailing-wage-rate schedule for Sprinkler Fitter Local 669 applicable to the BGSU project expressly states "1 Journeyman to 1 Apprentice" under the heading "Ratio." As is clear throughout the prevailing-wage laws, the prevailing-wage-rate schedule determined by the director of commerce sets forth "the prevailing rates of wages to be paid to employees in applicable occupations and the ratios of helpers, apprentices, trainees, serving laborers, and assistants to skilled workers * * *." Ohio Adm. Code 4101:9–4–02(Z).

{¶ 25} Shambaugh contends that if the ratio is to be applied at the job site as opposed to company-wide, then the second sentence of the journeyman-to-apprentice ratio provision of the CBA ("No apprentice may be employed on a job where there are no Journeymen employed") has no meaning. The prevailing-wage law, however, looks to the CBA to determine the numerical ratio of apprentices to journeymen that will be allowed on public construction projects, i.e., job sites, in Ohio. In the case before us, that ratio is one to one. Any other

interpretation would conflict with the very purpose of the prevailing-wage laws and would make it impossible to determine on a daily basis whether a contractor or subcontractor was in compliance with the law.

{¶ 26} The first assignment of error is therefore not well taken.

{¶ 27} In its second assignment of error, Shambaugh challenges the trial court's holding that it violated the prevailing-wage law by failing to specify fringe-benefit payments on its certified payroll reports.

■ {¶ 28} Under the prevailing-wage law, every contractor and subcontractor working on a public-improvement project and subject to the provisions of R.C. 4115.03 to 4115.16 is required to file with the prevailing-wage coordinator certified payroll reports within two weeks of the initial pay date and each month thereafter, "which shall exhibit for each employee paid any wages, the employee's name, current address, social security number, number of hours worked during each day of the pay periods covered and the total for each week, the employee's hourly rate of pay, the employee's job classification, fringe payments, and deductions from the employee's wages." R.C. 4115.071(C). The certified payroll reports "shall include at a minimum the basic hourly rate, calculated hourly rate of fringe benefits credited, [and] all payroll deductions." Ohio Adm.Code 4101:9–4–06(B). Fringe benefits permissibly included in the calculations include: medical or hospital care or insurance to provide such; pensions on retirement or death or insurance to provide such; compensation for injuries or illnesses resulting from occupational activities if it is in addition to that coverage required by Chapters 4121 and 4123 of the Revised Code; supplemental unemployment benefits that are in addition to those required by Chapter 4141 of the Revised Code; life insurance; disability and sickness insurance; accident insurance; vacation and holiday pay; defraying of costs for apprenticeship or other similar training programs that are beneficial only to the laborers and mechanics affected; and other bona fide fringe benefits. R.C. 4115.03(E); Ohio Adm.Code 4101:9–4–02(N).

{¶ 29} From February 21, 2001, through May 8, 2002, Shambaugh submitted certified payroll reports as required by the prevailing-wage law. Attached to those reports is a form titled "Statement of Compliance." That form appears to be a standard form issued by the U.S. Department of Labor Wage and Hour and Public Contracts Division. Kim Pedersen, a payroll officer with Shambaugh, completed the statements of compliance and thereby certified that the information contained therein was accurate. The statements read:

{¶ 30} "I, Kim Pedersen, payroll, do hereby state:

{¶ 31} "(1) That I pay or supervise the payment of the persons employed by Shambaugh & Son, L.P. on the BGSU Student Union Job # 290622, that during

the payroll period commencing on the ____ day of ____, and ending the ____ day of ____, all persons employed on said project have been paid the full weekly wages earned, that no rebates have been or will be made either directly or indirectly to or on behalf of said Shambaugh & Son, L.P. from the full weekly wages earned by any person and that no deductible [sic] have been made either directly or indirectly from the full wages earned by any person, other than permissible deductions as defined in Regulations, Part 3 (29 CFR Subtitle A), issued by the Secretary of Labor under the Copeland Act, as amended (48 Stat. 948, 63 Stat. 108, 72 Stat. 967; 76 Stat. 357; 40 U.S.C. 276c), and described below:

{¶ 32} "UNION DEDUCTIONS: VACATION FUND AND UNION DUES

{¶ 33} "MISC. DEDUCTIONS: ADDITIONAL SAVINGS AS NOTED ON CERTIFIED PAYROLL REPORTS, ALSO, UNIFORM DEDUCTIONS.

{¶ 34} " * * *

{¶ 35} "(4) That:

{¶ 36} "(a) WHERE FRINGE BENEFITS ARE PAID TO APPROVED PLANS, FUNDS, OR PROGRAMS.

{¶ 37} " X  In addition to the basic hourly wage rates paid to each laborer or mechanic listed in the above referenced payroll, payments of fringe benefits as listed in the contract have been or will be made to appropriate programs for the benefit of such employees, except as noted in Section 4(c) below."

{¶ 38} The bottom of the statement of compliance then reads: "THE WILLFUL FALSIFICATION OF ANY OF THE ABOVE STATEMENTS MAY SUBJECT THE CONTRACTOR OR SUBCONTRACTOR TO CIVIL OR CRIMINAL PROSECUTION"

{¶ 39} Accordingly, pursuant to the statement of compliance that Shambaugh submitted along with its certified payroll reports, it certified that in addition to the payments listed in the payroll, it had paid or would be paying the fringe benefits required under the contract. The contract includes the schedule of prevailing wages prepared by the director of commerce. R.C. 4115.04(A). That schedule by definition includes the basic hourly rate of pay and "the rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person pursuant to a fund, plan or program." R.C. 4115.03(E). It is undisputed that the prevailing-wage-rate schedules prepared for the project and that applied to the journeymen and apprentices of Sprinkler Fitter Local 669 included the calculated hourly rates of contributions for health and welfare, pension, apprenticeship training, and an annuity. By certifying that it had paid or would pay the fringe benefits required under the contract, Shambaugh certified that the fringe benefits required under the contract and specified in the

prevailing-wage-rate schedules had been or would be paid. We therefore cannot find that Shambaugh violated R.C. 4115.071 in its preparation of the certified payroll reports, and the second assignment of error is well taken.

{¶ 40} In its third assignment of error, Shambaugh asserts that the trial court erred in awarding Vaughn attorney fees.

{¶ 41} R.C. 4115.16(D) reads: "Where, pursuant to this section, a court finds a violation of sections 4115.03 to 4115.16 of the Revised Code, the court shall award attorney fees and court costs to the prevailing party." Pursuant to this section, the lower court awarded Vaughn attorney fees after finding that Shambaugh had violated R.C. 4115.05 and 4115.071. Because we have concluded that the lower court erred in finding that Shambaugh violated R.C. 4115.071, this cause must be remanded to the trial court for a redetermination of the attorney fees due Vaughn. The third assignment of error is well taken in part.

{¶ 42} On consideration whereof, the court finds that substantial justice has not been done the party complaining, and the judgment of the Wood County Court of Common Pleas is affirmed in part and reversed in part. This cause is remanded to the trial court for further proceedings consistent with this decision. The parties are ordered to equally share the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.

Judgment affirmed in part
and reversed in part,
and cause remanded.

PARISH and HANDWORK JJ., concur.