DECISION AND JUDGMENT ENTRY
{¶ 1} This is the second time that this cause is before the court. In the prior appeal, we reversed a judgment of the Wood County Court of Common Pleas and remanded this case to the trial court for further proceedings consistent with our decision. See Internatl. Bhd. ofElectrical Workers, Local Union No. 8 v. Vaughn Industries, Inc.,156 Ohio App.3d 644, 656, 2004-Ohio-1655 ("IBEW I"). *Page 2 
 {¶ 2} Briefly, appellee/cross-appellant, Vaughn Industries, Inc. ("Vaughn"), is a private construction contractor whose employees performed work on two public projects at Bowling Green State University in Wood County, Ohio. Id. at ¶ 4. These projects are known as the Electrical Distribution System Project and the Psychology Building Project. Id. Appellant/cross-appellee, the International Brotherhood of Electrical Workers, Local Union No. 8 ("IBEW"), is a labor union that "represents over 2,000 electrical workers in northwest Ohio and southeast Michigan." Id. at ¶ 5. In 2001, IBEW filed two complaints against Vaughn with the Administrator of the Ohio Bureau of Employment Services, raising alleged violations of R.C. Chapter 4115, which governs the prevailing wages and hours for employees who work on public projects. Id. When the administrator failed to rule on the merits of IBEWs complaint within the time period mandated by R.C. 4115.16(B), IBEW filed a civil action in the Wood County Court of Common Pleas. Id. at ¶ 10.
 {¶ 3} Each party subsequently submitted a motion for summary judgment. Id. at ¶ 15 and ¶ 16. Vaughn's motion for summary judgment alleged that the trial court lacked subject matter jurisdiction to entertain IBEWs complaint. Id. at ¶ 15. IBEWs motion asked the lower court to grant it summary judgment on its claims involving alleged violations of R.C. 4115.05, R.C. 4115.071(C), and "the gross underpayment of the total prevailing wage package prescribed by law." Id. at ¶ 16. As to this last issue, IBEW focused on the method used to determine the fringe benefits credit received by Vaughn as part of the prevailing wage calculation. Id. at ¶ 44. *Page 3 
 {¶ 4} On February 3, 2003, the common pleas court granted Vaughn's motion for summary judgment and denied IBEW's motion for summary judgment. Id. at ¶ 17. IBEW appealed[1] . Id. at ¶ 20. On appeal, we first determined that the trial court had the jurisdiction to consider IBEW's civil action. Id. at ¶ 33. We then addressed the proper method for calculating the fringe benefits credit, see id. at ¶ 61. We declined to consider IBEW's other assignments of error because they were not decided by the lower court, id. at ¶ 63, and remanded this cause to the trial court for further proceedings consistent with our judgment, id. ¶ 65.
 {¶ 5} Upon our remand, IBEW filed a second motion for summary judgment in which it asked the trial court to declare that Vaughn violated R.C. 4115.05 by not providing written notice to each of its employees that were not covered under a collective bargaining agreement of the identity of the prevailing wage coordinator appointed for the two public projects on which Vaughn employees worked. IBEW further requested summary judgment for Vaughn's alleged violation of R.C. 4115.071(C) by "failing to submit certified payroll reports enumerating the fringe benefit payments made for each employee" on these projects and that this violation was done intentionally within the meaning of R.C. 4115.13(H). Finally, IBEW asserted that it was entitled to summary judgment on the question of whether Vaughn violated R.C. 4115.10 by failing to pay the prevailing wage on the two projects. *Page 4 
 {¶ 6} Vaughn filed a memorandum in opposition and its own motion for summary judgment on the same four issues. As to the fourth issue, Vaughn pointed out that it calculated its fringe benefit credits pursuant to the method set forth by this court in IBEW I. Specifically, Vaughn claimed that for the purpose of determining compliance with Ohio's Prevailing Wage Law, it calculated the fringe benefits credit "on an hour-for-hour basis by dividing [its] total contribution to fringe benefits on public projects by the total number of hours worked by [its] employee[s] on public projects." Id. at ¶ 61.
 {¶ 7} On November 7, 2007, the common pleas court entered a judgment in which it denied both IBEW's and Vaughn's motions for summary judgment on the issues raised relative to R.C. 4115.05 and 4115.10. The court did, however, grant, in part, IBEW's motion for summary judgment as it related to R.C. 4115.071(C), by finding that Vaughn did violate this statute. The court denied the motion on the question of whether that violation was intentional. Vaughn then filed a combined motion for reconsideration/motion for summary judgment of the court's ruling on the violation of R.C. 4115.071(C) claim based upon our decision inVaughn Industries, Inc. v. Dimech Serv., 167 Ohio App.3d 634,2006-Ohio-3381. On September 8, 2006, the court below granted the motion for reconsideration, determined that Vaughn was entitled to summary judgment on the R.C. 4115.071(C) claim, and held that the question of intentionality was, consequently, moot.
 {¶ 8} On October 10, 2006, the court held a trial to the bench on the remaining claims alleging violations of R.C. 4115.05 and 4115.10. It subsequently entered a *Page 5 
judgment in favor of Vaughn. IBEW then filed a timely motion for findings of fact and conclusions of law; Vaughn requested attorney fees per R.C. 4115.16(D). The court entered a judgment containing its findings of fact and conclusions of law on March 26, 2007. It entered a judgment denying the motion for attorney fees on April 3, 2007.
 {¶ 9} IBEW appeals the trial court's judgment and asserts that the following errors occurred in the proceedings below:
 {¶ 10} "I. The trial court committed reversible error when it denied appellant/cross-appellee's (`Local 8') second motion for summary judgment.
 {¶ 11} "II. The trial court committed reversible error when it granted Vaughn's Civ. R. 54(B) motion for reconsideration.
 {¶ 12} "III. The trial court committed reversible error when it ruled in favor of Vaughn in its March 26, 2007 trial order.
 {¶ 13} "IV. The trial court committed reversible error by failing to hold that Vaughn violated R.C. 4115.05 by not delivering written notice of the name of the prevailing wage coordinator on the Psychology Building Project, and by not delivering further written notices to employees on both projects when elevated to higher apprenticeship classifications.
 {¶ 14} "V. The trial court committed reversible error by refusing to hold Vaughn's certified payroll reports violated R.C. 4115.071(C) because the reports did not disclose the calculated hourly fringe benefit credit it claims, and because the reports falsely represent that Vaughn paid the scheduled fringe benefit rates as listed in the contract. *Page 6 
 {¶ 15} "VI. The trial court committed reversible error by refusing to hold that Vaughn intentionally violated R.C. 4115.071(C) because Vaughn's omission of its calculated hourly fringe benefits credit from the payroll reports and its misrepresentation of the payment of the fringe benefits listed in the contract were knowing, purposeful, and willful.
 {¶ 16} "VII. The trial court committed reversible error by refusing to hold that Vaughn underpaid its employees in violation of R.C. 4115.10(A) by overstating the calculated hourly fringe benefit credit that lawfully may be claimed for its VEBA and training trust."
 {¶ 17} Vaughn filed a timely cross-appeal and raises a single cross-assignment of error:
 {¶ 18} "The trial court incorrectly ruled that appellant Vaughn Industries, Inc. was not entitled to an award of attorney fees pursuant to R.C. 4115.16(D)."
 {¶ 19} In Assignment of Error No. I, IBEW contends that the trial court erred in denying its renewed motion for summary judgment on all four of its claims, specifically, the alleged violations of: (1) R.C. 4115.05, R.C. 4115.10(A), and R.C. 4115.071(C); and (2) the claim that the violation of R.C. 4114.071(C) was intentional. In reply, Vaughn cites Continental Ins. Co. v. Whittington (1994), 71 Ohio St.3d 150("Continental"), in contending that even if the IBEW was entitled to summary judgment, error, if any, made by the trial court is rendered moot because this case proceeded to trial on the same issues, *Page 7 
and evidence was offered to establish that there were genuine questions of material fact on these issues.
 {¶ 20} In Continental, the Supreme Court of Ohio held that "any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." Id. at the syllabus. That holding is based upon the conclusion that "a full and complete development of the facts at trial (as opposed to the limited factual evidence elicited upon discovery) showed that the [non-moving party was] entitled to judgment." Id., at 156.Continental is expressly limited to cases involving questions of material fact, as opposed to cases involving pure questions of law. Id., at 159.
 {¶ 21} Prior to applying the rule set forth in Continental we must first note that the common pleas court did not, technically speaking, deny IBEW's motion for summary judgment based upon a purported violation of R.C. 4115.071(C) and the accompanying claim of intentionality. Rather, the trial court, upon reconsideration, granted summary judgment to Vaughn on these issues. As a result, we shall address this question when discussing IBEW's Assignments of Error Nos. II, V, and VII.
 {¶ 22} The remaining issues raised by appellant are not a pure question of law. Rather, the judgment of the trial court in determining whether Vaughn violated R.C. 4115.05 and 4115.10(A) is a factual issue. As set forth below in our consideration of *Page 8 
IBEW's Assignment of Error Nos. IV and VII, the evidence offered at trial on these questions was sufficient to create a genuine issue of material fact supporting a judgment in favor of the nonmoving party, that is, Vaughn. Therefore, the denial of IBEW's motion for summary judgment based upon these statutes is rendered moot, and the union's Assignment of Error No. I, as relevant to R.C. 4115.05 and 4115.10(A), is found not well-taken. As a result, we shall consider IBEW's Assignments of Error Nos. IV and VII together with Assignment of Error No. III and determine whether the trial court's holdings regarding R.C. 4115.05 and 4115.10(A) are against the manifest weight of the evidence.
 {¶ 23} In Assignment of Error II, IBEW contends, in essence, that the trial court abused its discretion in granting Vaughn's motion for reconsideration of its grant of summary judgment to IBEW on the issue of whether Vaughn violated R.C. 4115.071(C). Prior to a ruling becoming final a trial court may, in its discretion, entertain a motion for reconsideration. State v. Ward, 4th Dist. No. 03CA2, 2003-Ohio-5650, at ¶ 11 (citation omitted); Picciuto v. Lucas Cty. Bd. of Commrs. (1990),69 Ohio App.3d 789, 796-797. An abuse of discretion means that a trial court's attitude in reaching its decision on a particular motion was unreasonable, arbitrary, or unconscionable. Harman v. Baldwin,107 Ohio St.3d 232, 2005-Ohio-6264, ¶ 16.
 {¶ 24} In the present case, Vaughn premised its motion for reconsideration on a recent case decided by this court on the subject of what constitutes compliance with R.C. 4115.071(C) in reporting fringe benefits paid to employees working on a public *Page 9 
improvement project. See Vaughn Industries, Inc. v. Dimech Servs.,167 Ohio App.3d 634, 2006-Ohio-3381, ¶ 27 ("Dimech"). Because our decision in Dimech directly affected the issue that was the subject of the common pleas court's grant of partial summary judgment in this cause, the trial court's attitude in granting the motion for reconsideration was not arbitrary, unconscionable or unreasonable. Consequently, IBEW's Assignment of Error No II is found not well-taken.
 {¶ 25} As they all relate to the trial court's grant of summary judgment to Vaughn on the issue of alleged violations of R.C. 4115.071(C), IBEW's Assignments of Error Nos. I, V, and VI shall be considered together.
 {¶ 26} An appellate court reviews a trial court's grant of summary judgment de novo, and, therefore, applies the same standard used by that court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129. Accordingly, summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v.Burt, 75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports its motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleadings, but *Page 10 
his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(E).
 {¶ 27} IBEW argues that Vaughn's certified copies of its payroll reports did not disclose the calculated hourly fringe benefit paid to each employee subject to the strictures of R.C. Chapter 4115. IBEW further claims that Dimech is distinguishable from the present case because the subcontractor, Shambaugh Son, L.P. ("Shambaugh"), in that case was a signatory to its employees' collective bargaining agreement, which allegedly set forth the hourly fringe benefit payments made by Dimech to those who worked on the public project. IBEW further asserts that Vaughn's certified payroll reports are "false' because they were submitted after this cause of action was commenced. IBEW did not raise this particular "falsity" argument in its memorandum in opposition to the motion for reconsideration/motion for summary judgment in the court below; we shall, therefore, disregard it. IBEW also contends that the trial court erred when it failed to grant its motion for summary judgment on the question of "intentionality."
 {¶ 28} R.C. 4115.071(C) provides, inter alia, that every contractor or subcontractor who works on a public project must submit a certified copy of its payroll within two weeks after an initial pay date and supplemental reports on a monthly basis thereafter. These certified payroll reports must include, among other things, each employee's fringe benefits. Id. Under Ohio Adm. Code 4101:9-4-06(B), the certified payroll report must *Page 11 
contain "at a minimum the basic hourly rate, calculated hourly rate of fringe benefits credited [to the employer], [and] all permissible payroll deductions."
 {¶ 29} In Dimech, Vaughn brought an action against Dimech Services and six of its subcontractors, including Shambaugh, for alleged violations of prevailing wage law that occurred during the course of a public works project. Id. at ¶ 5 and ¶ 7. Vaughn asserted, inter alia, that Shambaugh violated R.C. 4115.071(C) "by failing to prepare certified payroll reports enumerating each employee's fringe benefit payments." Id. at ¶ 7. Vaughn subsequently filed a motion for summary judgment on this issue in which it contended that Shambaugh violated R.C. 4115.071(C) by failing to itemize the fringe benefit payments made for each employee in its certified payroll reports. Id. at ¶ 8. The common pleas court agreed with Vaughn on this issue and held that Shambaugh's "failure to specify the benefit payments constituted a violation of the statute." Id. at ¶ 10.
 {¶ 30} On appeal, this court overruled the finding of the trial court. Id. at ¶ 39. Our rationale for this decision was the fact that Shambaugh's payroll officer included a statement of compliance with its certified payroll reports. Id. at ¶ 29. The relevant portion of the statement of compliance consisted of only a box marked with an "X" denoting that: "In addition to the basic hourly wage rates paid to each laborer or mechanic listed in the payroll, payments of fringe benefits as listed in the contract have been or will be made to appropriate programs for the benefit of such employees * * *." Id. at ¶ 37. *Page 12 
 {¶ 31} As applied to the present case, Vaughn's certified payroll reports also include "Statement of Compliance" avowing, in material part:
 {¶ 32} "(a) WHERE FRINGE BENEFITS ARE PAID TO APPROVED PLANS, FUNDS, OR PROGRAMS
 {¶ 33} "(X)-In addition to the basic hourly wage rates paid to each laborer or mechanic listed in the above referenced payroll, payments of fringe benefits as listed in the contract have been or will be made to appropriate programs for the benefit of such employees * * *."
 {¶ 34} Therefore, it appears that the statement of compliance in this cause is on all fours with the Dimech case. IBEW argues, however, thatDimech is distinguishable from the instant action because Shambaugh was a signatory to the collective bargaining agreement "between National Fire Sprinkler Association, Inc., and the Road Sprinkler Fitters Local Union 669." Id. at ¶ 5. IBEW thus maintains that because the prevailing wage schedules in both Shambaugh and this case are "derived exclusively from the collective bargaining agreements covering the various trades in a project's locale," Vaughn was required to be a signatory to IBEW'S collective bargaining agreement or the rule in Dimech is inapplicable. We disagree.
 {¶ 35} First, this court never made such a holding. The import of Local Union 669's collective bargaining agreement was discussed only as it related to the ratio of apprentices to skilled workers on the job site. Id. at ¶ 24-25. Furthermore, as noted by Vaughn, the contract referred to in Dimech was the contract between Dimech Services, *Page 13 
its subcontractor, Shambaugh, and the public entity, Bowling Green State University, for their work on a new student union. Id. at ¶ 5. Therefore, the trial court did not err in applying the holding inDimech to the instant case and granting summary judgment to Vaughn on the issue of whether Vaughn violated R.C. 4115.071(C). IBEW's Assignment of Error No. I as it pertains to R.C. 4115.071(C), and Assignment of Error No. V are found not well-taken. IBEW's Assignment of Error No. I, as it relates to intentionality, and Assignment of Error No. VI, which asserts that the trial court erred in failing to find that Vaughn intentionally violated R.C. 4115.071(C) are thereby rendered moot.
 {¶ 36} IBEW's Assignment of Error No. III essentially argues that the trial court's findings of fact and conclusions of law with regard to R.C. 4115.05 and 4115.10 are against the manifest weight of the evidence. This assignment shall, therefore, be considered in conjunction only with, respectively, IBEW's Assignments of Error Nos. IV and VII.
 {¶ 37} A civil judgment that is "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. "[A]n appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St .3d 77, 80. Furthermore, in a civil case, a plaintiff bears the burden of proof to establish all of the elements of his *Page 14 
claim by a preponderance of the evidence. Hanna v. Groom, 10th Dist No. 07AP-502, 2008-Ohio-765, ¶ 39 (citations omitted).
 {¶ 38} IBEW's Assignment of Error No. IV contends that the trial court's determination that Vaughn did not violate R.C. 4115.05 is against the manifest weight of the evidence on the issues of whether (1) Vaughn provided written notice of the name of the prevailing wage coordinator on the Psychology Building; and (2) Vaughn failed to deliver further written notices to employees working on the Psychology Building Project and Electrical Distribution System Project when he or she was elevated to higher apprenticeship classifications.
 {¶ 39} R.C. 4115.05 reads, in pertinent part:
 {¶ 40} "On the occasion of the first pay date under a contract, the contractor or subcontractor shall furnish each employee not covered by the collective bargaining agreement or understanding between the employers and bona fide organizations of labor with individual written notification of the job classification to which the employee is assigned, * * * and the identity of the prevailing wage coordinator appointed by the public authority. The contractor or subcontractor shall furnish the same notification to each affected employee every time the job classification of the employee is changed."
 {¶ 41} At the trial of this cause, Matthew Plotts, the President of Vaughn Industries, Inc., testified that his company did not have the name of the prevailing wage coordinator at the inception of the Psychology Building project. When Vaughn learned the name of the coordinator, they posted it on the "job box" at the site of the construction. *Page 15 
According to Plotts, the job box "is a big metal box that hinges up" and contains the tools for Vaughn employees. Not only was the identity of the prevailing wage coordinator posted, in writing, on this box, other vital information related to the prevailing wage determination, OSHA, the Equal Opportunity Employment Commission, and worker's compensation was also posted on the job box. IBEW failed to offer any evidence tending to show that the name of the prevailing wage coordinator was not posted by the first payday under Vaughn's contract with Bowling Green State University, that any of Vaughn's employees were subject to the strictures of R.C. 4115.05, and that a posted writing is not sufficient "written notification" to those employees, if any, under R.C. 4115.05.[2] We therefore conclude that the trial court's judgment on this issue is not against the manifest weight of the evidence.
 {¶ 42} IBEW also asserts Vaughn violated R.C. 4115.05 by failing to deliver further written notices corresponding to changes in apprentice classifications on either the Psychology Building project or the Electrical Distribution System project. IBEW apparently abandoned this claim by not raising it either in its first or second motion for summary judgment or in the first appeal of the present case to this court. It re-emerged, however, during cross-examination of Matthew Plotts at trial and is argued by IBEW in its post-trial brief. *Page 16 
 {¶ 43} Plotts' testimony revealed that electrical apprentices were notified any time that their wages were changed, but that their status/classification as electrical apprentices did not change during the course of the projects. Moreover, Exhibits G and L submitted by Vaughn enumerates the classifications of the employees who worked on the projects. Consequently, the trial court's judgment on this issue is supported by some competent, credible evidence and is, therefore, not against the manifest weight of the evidence. IBEW's Assignments of Error Nos. III and IV, which challenge the trial court's judgment in favor of Vaughn on the purported violations of R.C. 4115.05 are found not well-taken.
 {¶ 44} IBEW's Assignment of Error No. VII maintains that the trial court's judgment is against the manifest weight of the evidence in that Vaughn is not entitled to the fringe benefit credit that it claims; thus, the employees on the two public projects were underpaid. IBEW further contends that Vaughn, in calculating what it contributes per hour to its Voluntary Employment Benefit Association ("VEBA") and "training trust" fringe benefits, does not limit these payments only to public employees working on public hours. In short, IBEW argues that Vaughn only applies employer contributions to prevailing wage hours. IBEW claims that this method of calculating fringe benefit credits is the same as it was five years ago and was rejected by this court in IBEW I. The union asks this court to find that Vaughn should receive zero fringe benefit credits pursuant to Ohio Adm. Code 4101:9-4-06(F). In the alternative, IBEW claims that this court must adopt one of its methods of calculation per Ohio Adm. Code 4101:9-4-06(D) or Ohio Adm. Code 4101:9-4-06(E). We disagree. *Page 17 
 {¶ 45} To repeat, in IBEW I, this court determined that to be in "compliance with Ohio's Prevailing Wage Law, and unless otherwise modified by the administrator, fringe benefits credit must be calculated on the hour-for hour-basis by dividing the total contribution to fringe benefits on public projects by the total number of hours worked by the employee on public projects." A thorough review of the trial testimony given by Vaughn's President, Matthew Plotts, and Chief Financial Officer, Jennifer Smalley, as well as the voluminous records related to the calculation of the fringe benefits credit that were entered into evidence at trial, reveals some competent, credible evidence that this credit was calculated properly. Accordingly, IBEW's Assignments of Error No. III, as it relates to R.C. 4115.10, and Assignment of Error No. VII are found not well-taken.
 {¶ 46} In its cross-assignment of error, Vaughn complains that the trial court erred in failing to grant its request for attorney fees.
 {¶ 47} R.C. 4115.16(D) provides:
 {¶ 48} "Where, pursuant to this section, a court finds a violation of sections 4115.03 to 4115.16 of the Revised Code, the court shall award attorney fees and courts costs to the prevailing party. In the event that court finds that no violation has occurred, the court may award court costs and attorney fees to the prevailing party, other than to the director or the public authority, where the court finds that action brought was unreasonable or without foundation, even though not brought in subjective bad faith."
 {¶ 49} Pursuant to the second sentence in R.C. 4115.16(D), the use of "may" means that a trial court has the discretion to award the prevailing party attorney fees. *Page 18 
 Kuptz Hubbard ex rel Creed v. Sauline (1996), 74 Ohio St.3d 402, 408. Accordingly, we will only reverse the trial court's decision if its judgment shows that its attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. An appellate court may not substitute its judgment for that of the trial court when applying this standard. Pons v. Ohio State Med. Bd,66 Ohio St.3d 619, 621, 1993-Ohio-0122.
 {¶ 50} We cannot say the common pleas court, in denying Vaughn's motion for attorney fees was unreasonable, arbitrary, or unconscionable. In particular, this court determined in IBEW I that the manner in which Vaughn sought to determine the fringe benefit credit for the public projects in this cause was incorrect. Id. at ¶ 61. Therefore, this cause was not brought without foundation, and Vaughn's sole cross-assignment of error is found not well-taken.
 {¶ 51} The judgment of the Wood County Court of Common Pleas is affirmed. Appellant and appellee are each ordered to pay one-half of the cost of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4. *Page 19 
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J., concur.
[1] Vaughn filed a cross-appeal asserting that the trial court erred in denying its motion for attorney fees. Id. at ¶ 29. Due to our decision on IBEW's assignments of error, we found Vaughn's cross-assignment of error not well-taken. Id. at ¶ 64.
[2] In its answer, Vaughn admitted that it did not "furnish each employee with individual written notification of the identity of the prevailing wage coordinator appointed by the public authority," but denied all other allegations based upon an alleged violations of R.C. 4115.05 that were made in IBEW's complaint. *Page 1