THE STATE, EX REL. EVANS, DIR., APPELLEE, *v.*
MOORE, MAYOR, ET AL., APPELLANTS.

[Cite as State, ex rel. Evans, v. Moore (1982),
69 Ohio St. 2d 88.]

(No. 81-108—Decided January 27, 1982.)

*Mr. William J. Brown,* attorney general, and *Ms. Colleen K. Nissl,* for appellee.

*Mr. Robert J. Holland,* city attorney, *Messrs. Bricker & Eckler, Mr. Russell Leach, Mr. Michael J. Renner, Mr. Jerry E. Nathan* and *Mr. John W. Cook III,* for appellants.

*Messrs. Topper, Alloway, Goodman, DeLeone & Duffey, Mr. N. Victor Goodman* and *Mr. John J. Duffey,* for Building and Construction Trades Council *et al.*

CELEBREZZE, C. J. The critical issue in this case is whether the city may unilaterally exempt itself, pursuant to its local self-government or police powers[2], from compliance with the prevailing wage law.

It is a fundamental principle of Ohio law that, pursuant to

[2] Section 3, Article XVIII of the Ohio Constitution provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

the "statewide concern" doctrine, a municipality may not, in the regulation of local matters, infringe on matters of general and statewide concern. See, *e.g., Eastlake* v. *Bd. of Bldg. Stds.* (1981), 66 Ohio St. 2d 363; *Cleveland Electric Illuminating Co.* v. *Painesville* (1968), 15 Ohio St. 2d 125. Moreover, as this court ruled in *Canton* v. *Whitman* (1975), 44 Ohio St. 2d 62, 66, municipal regulations which have significant extraterritorial effects are matters of statewide concern.

Although the statewide concern doctrine was first enunciated by this court in *Bucyrus* v. *Dept. of Health* (1929), 120 Ohio St. 426, the concept was most cogently articulated in *Cleveland Electric Illuminating Co.* v. *Painesville, supra,* at page 129:

"Thus, even if there is a matter of local concern involved, if the regulation of the subject matter affects the general public of the state as a whole more than it does the local inhabitants the matter passes from what was a matter for local government to a matter of general state interest."

The *Painesville* rationale was further developed and refined in *Canton* v. *Whitman, supra,* at pages 65 and 66:

" * * * Municipalities may enact police and similar regulations under their powers of local self-government, but such regulations 'must yield to general laws of statewide scope and application, and statutory enactments representing the general exercise of police power by the state prevail over police and similar regulations in the exercise by a municipality of the powers of local self-government.' * * *
" * * *

"The power of local self-government and that of the general police power are constitutional grants of authority equivalent in dignity. A city may not regulate activities outside its borders, and the state may not restrict the exercise of the powers of self-government within a city. The city may exercise the police power within its borders, but the general laws of the state are supreme in the exercise of the police power, regardless of whether the matter is one which might also properly be a subject of municipal legislation. Where there is a direct conflict, the state regulation prevails."

Applying the foregoing principles to the facts at bar, we conclude, for the reasons that follow, that the General

Assembly, in enacting the prevailing wage law, manifested a statewide concern for the integrity of the collective bargaining process in the building and construction trades. Thus, the prevailing wage law preempts and supersedes any local ordinance to the contrary.

The precise statutory language of R. C. 4115.03, the definitional section of the prevailing wage law, provides the most direct and persuasive indication that the city's attempt to nullify the prevailing wage law is beyond even the outer limits of a municipality's local self-government or police powers. More precisely, R. C. 4115.03(D) provides:

" 'Locality' means the county wherein the physical work upon any public improvement is being performed."

Therefore, pursuant to R. C. 4115.03(D), the prevailing wage law has a significant extraterritorial effect. See, also, *Beachwood* v. *Bd. of Elections* (1958), 167 Ohio St. 369, 371 (if the local legislation affects only the municipality itself, with no extraterritorial effects, the subject matter of the legislation is within the power of local self-government).

The state's interest in supporting the collective bargaining process provides an additional justification for the conclusion that the challenged ordinance is beyond the scope of municipal power. The prevailing wage law evidences a legislative intent to provide a comprehensive, uniform framework for, *inter alia,* worker rights and remedies vis-a-vis private contractors, sub-contractors and materialmen engaged in the construction of public improvements in this state. The prevailing wage law delineates civil and criminal sanctions for its violation. Above all else, the primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector.

All of these considerations clearly transcend local boundaries, thus demonstrating the genuine statewide concern[3] for

---

[3] We look askance on appellants' contention that *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375, controls the case at bar since *Benevolent Assn.* is readily distinguishable from the facts *sub judice* in a variety of ways. As paragraph two of the syllabus of *Benevolent Assn.* indicates, a key issue was whether a non-chartered municipality has the power to mandate, by ordinance, the amount of compensation paid to *its employees* who take a leave of absence as members of the armed forces

compliance with and enforcement of the prevailing wage law.

Accordingly, Ordinance No. 75-78, which directly conflicts with the prevailing wage law, must yield to an overriding law of statewide scope and concern.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed[4] and the writ of mandamus requiring appellants to comply with all the provisions of the prevailing wage law is allowed.

> *Judgment affirmed and*
> *writ allowed.*

SWEENEY and C. BROWN, JJ., concur.

W. BROWN, J., concurs in the syllabus and judgment.

LOCHER, HOLMES and KRUPANSKY, JJ., dissent.

WILLIAM B. BROWN, J., concurring. I concur in the syllabus and the judgment. It is my opinion that the prevailing wage statutes are general police power statutes as they affect the public health, safety, morals and general welfare and have a uniform application. The state authority to promulgate such statutes can be derived from either the inherent police power of the state or from Section 34, Article II of the Ohio Constitution, which authorizes the regulation of labor.

CLIFFORD F. BROWN, J., concurring. I concur in affir-

---

reserve. On the other hand, however, the case at bar concerns, *inter alia,* compensation of employees of private contractors and subcontractors engaged in the construction of public improvements.

Secondly, in *Benevolent Assn.,* the court ruled, in fn. 5, at page 383, that, "[t]he concept of statewide concern is not applicable in the instant cause, regardless of whether the city in question has adopted a charter. * * * "

Finally, we also stated in *Benevolent Assn.,* at page 383, that, " * * * [t]he state has many other viable alternatives to induce enlistment and maintenance of the armed reserves rather than further saddling the municipalities with an additional expense."

Under the facts at bar, though, we can find no viable alternatives to the prevailing wage law which would prevent the undercutting of employee wages on private construction projects.

[4] Our disposition of this case necessarily renders moot appellants' scope of discovery, *res judicata,* collateral estoppel and *stare decisis* arguments. Nevertheless, we do note, parenthetically, our approval of the Court of Appeals' treatment of those issues.

ming the Court of Appeals judgment, because the General Assembly, in enacting the prevailing wage law, manifested a concern for statewide uniformity in the collective bargaining process for the building and construction trades.

The prevailing wage law must necessarily preempt any local ordinance to the contrary. This principle is well expressed in Chief Justice Celebrezze's majority opinion, using an abundance of cited precedents. I concur separately in order to note additional authorities which recognize that a valid exercise of the state's police power preempts that of a municipal corporation acting under the Home Rule Amendment, Section 3, of Article XVIII of the Ohio Constitution. See, *e.g., Saunders* v. *Zoning Dept.* (1981), 66 Ohio St. 2d 259; *Willoughby Hills* v. *Corrigan* (1972), 29 Ohio St. 2d 39; *State, ex rel. McElroy,* v. *Akron* (1962), 173 Ohio St. 189, 192; *Beachwood* v. *Bd. of Elections* (1958), 167 Ohio St. 369, 371, paragraph one of the syllabus; *Miami Co.* v. *Dayton* (1915), 92 Ohio St. 215.

In *Eastlake* v. *Bd. of Bldg. Stds.* (1981), 66 Ohio St. 2d 363, a municipal ordinance imposed more restrictive standards for construction of industrialized units than those mandated by R. C. Chapters 3781 and 3791. Finding the ordinance in conflict with general state law, this court stated in paragraph one of the syllabus, as follows:

"When the state by comprehensive statutory plan has imposed regulations statewide where there is a genuine statewide concern for uniformity in building industrialized units, any ordinance which differs from the statutes by imposing more restrictive requirements is in 'conflict' therewith and is *ipso facto* invalid. *State, ex rel. Klapp,* v. *Dayton P. & L. Co.* (1967), 10 Ohio St. 2d 14; *State, ex rel. Arey,* v. *Sherrill* (1944), 142 Ohio St. 574; *Cleveland Tel. Co.* v. *Cleveland* (1918), 98 Ohio St. 358." This principle is equally applicable to the instant case.

Appellants argue that under Section 3, Article XVIII of the Ohio Constitution, the Upper Arlington Ordinance is an exercise of the power to adopt "local police, sanitary and other similar regulations." Appellants further contend that the ordinance is a valid police regulation "not in conflict with general laws" because the prevailing wage law is not a "general law."

Appellants are in error. In *Fitzgerald* v. *Cleveland* (1913),

88 Ohio St. 338, at page 359, this court stated that the essence of "general laws" which prevail over conflicting municipal powers under Section 3 of Article XVIII are those that involve:

" * * * [t]he concern of the state for the peace, health and safety *of all of its people, wholly separate and distinct from, and without reference to, any of its political subdivisions* - such as those which regulate the morals of people, the purity of their food, the protection of the streams, the safety of buildings and similar matters." (Emphasis added.)

The extent of municipal powers under the Home Rule Amendment was delineated by this court in *Canton v. Whitman* (1975), 44 Ohio St. 2d 62, 65, as follows:

"[Section 3 of Article XVIII] * * * adopted in 1912, preserved the supremacy of the state in matters of 'police, sanitary and other similar regulations,' while granting municipalities sovereignty in matters of local self-government, limited only by other constitutional provisions. Municipalities may enact police and similar regulations under their powers of local self-government, but *such regulations 'must yield to general laws of statewide scope and application,* and statutory enactments representing the general exercise of police power by the state prevail over police and similar regulations in the exercise by a municipality of the powers of local self-government.' * * * " (Emphasis added.) (Citations omitted.)

The prevailing wage law applies to *all* entities, both public and private, engaged in the contracting and construction of public improvements. For example, R. C. 4115.07 provides:

"*All* contractors and subcontractors * * * shall make full payment of such wages in legal tender, without any deduction for food, sleeping accommodations, transportation, use of small tools, * * * ." (Emphasis added.) Accordingly, the state statute is a general law, preempting conflicting local ordinances.

Appellants, in arguing that the prevailing wage law is not a general law, rely heavily upon the discussion of "general laws" in *Garcia v. Siffrin* (1980), 63 Ohio St. 2d 259, certiorari denied, 450 U. S. 911. Although *Garcia v. Siffrin, supra,* was not expressly overruled by this court, it has been overruled *sub silentio* by our holding in *Saunders v. Zoning Dept., supra.*

The overruling of *Garcia* was recognized in the dissent of Justice Holmes, the author of *Garcia,* in *Saunders, supra.* That case no longer has any viability. Reliance on its discussion and application of "general laws" is misplaced and erroneous.

"General laws" are those operating uniformly throughout the state with general application under the same circumstances and conditions. *Canton* v. *Whitman, supra; Schneiderman* v. *Sesanstein* (1929), 121 Ohio St. 80; *Leis* v. *Cleveland Ry. Co.* (1920), 101 Ohio St. 162; *Fitzgerald* v. *Cleveland, supra.* The prevailing wage law, R. C. 4115.03 *et seq.* fits this definition and is a general law.

Given this court's long line of legal precedent recognizing that the valid exercise of the state police power is paramount to municipal ordinances in conflict therewith, I am not persuaded by the many authorities upon which appellants heavily rely, namely, *Teamsters Local Union No. 377* v. *Youngstown* (1980), 64 Ohio St. 2d 158, 160, fn. 1; *Novak* v. *Perk* (1980), 64 Ohio St. 2d 43, 45-46; *Dies Electric Co.* v. *Akron* (1980), 62 Ohio St. 2d 322, 325; *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375; *State, ex rel. Petit,* v. *Wagner* (1960), 170 Ohio St. 297; *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191; and *Craig* v. *Youngstown* (1954), 162 Ohio St. 215. These are either inapposite or irrelevant.

SWEENEY, J., concurs in the foregoing concurring opinion.

LOCHER, J., dissenting. The majority opinion fails at the threshold of "Home Rule" analysis.[5] Therefore, I must dissent. Section 3 of Article XVIII of the Ohio Constitution provides:

"Municipalities shall have authority to exercise all *powers of local self-government* and to adopt and enforce within their limits such local police, sanitary and other similar *regulations, as are not in conflict* with general laws." (Emphasis added.)

---

[5] The majority likewise does not address the prior question: why this cause lends itself to mandamus. That is, the majority does not so much as mention the three criteria for mandamus: "the relator has a clear legal right to the relief prayed for, * * * the respondent is under a clear legal duty to perform the requested act, and * * * relator has no plain and adequate remedy at law * * * ." *State, ex rel. Westchester,* v. *Bacon* (1980), 61 Ohio St. 2d 42, paragraph one of the syllabus. We should reverse the Court of Appeals under this analysis alone.

This court has repeatedly stated that we need not reach the question of whether a local provision conflicts with the general laws if a power of local self-government is at issue. See, *e.g., State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, paragraph four of the syllabus; *Dies Electric Co.* v. *Akron* (1980), 62 Ohio St. 2d 322, 325. The majority neglects to make this critical determination and merely searches for a conflict between the ordinance and the general laws. Rather, the conflict issue should not arise here because this case involves a central power of self-government—the power of the purse.[6]

Today's decision prevents a municipality from controlling payments to the employees of contractors engaged in public works construction projects. Yet, almost 30 years ago, this court held that a city may exempt its classified civil service employees, who are working on the construction of public improvements, from the prevailing wage law. *Craig* v. *Youngstown* (1954), 162 Ohio St. 215.[7] In tandem, today's holding and *Craig* mean that the *employees' status* determines whether the prevailing wage law applies rather than the *employees' function.* I see no constitutional distinction between the employees of a city and the employees of a contractor who may be performing the same tasks. Regardless, the majority does not cite *Craig,* much less distinguish it.

Furthermore, in *Dies, supra,* at 326, we concluded that "the retainage of funds to guarantee work executed on a contract for the improvement of municipal property is a matter embraced within the field of local self-government." In tandem, today's holding and *Dies* mean that a municipality *may* not determine how much it will pay that same contractor's employees.

None of this makes legal, fiscal or economic sense. Indeed, the majority decision leaves municipalities powerless to contract.

---

[6] See our general discussion of the powers of local self-government, as well as their limitations, in *Dies, supra,* at 326-328.

[7] This conclusion is consistent with the numerous holdings of this court that municipalities *can* control the compensation of their employees. See, *e.g., State, ex rel. Mullin,* v. *Mansfield* (1971), 26 Ohio St. 2d 129, paragraph three of the syllabus, certiorari denied, 404 U. S. 985; *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375, paragraph two of the syllabus; *Teamsters Local Union No. 377* v. *Youngstown* (1980), 64 Ohio St. 2d 158.

Section 3 of Article XVIII guarantees the right of municipalities "to exercise all powers of local self-government." Nothing is more germane to effective self-government than the power to determine the nature, kind and extent of municipal expenditures.

Accordingly, I would reverse the judgment of the Court of Appeals and remand the cause to that court to reinstate the judgment of the trial court upholding Upper Arlington Ordinance No. 75-78 as a proper exercise of that city's Home Rule power.

HOLMES and KRUPANSKY, JJ., concur in the foregoing dissenting opinion.