BERGMAN ET AL., APPELLANTS, *v*. MONARCH CONSTRUCTION
COMPANY, APPELLEE, ET AL.
[Cite as *Bergman v. Monarch Constr. Co.*,
124 Ohio St.3d 534, 2010-Ohio-622.]

*Prevailing-wage law — R.C. 4115.10(A) — Penalty for noncompliance in employee-initiated action.*

(Nos. 2009-0558 and 2009-0649 — Submitted November 18, 2009 — Decided March 2, 2010.)

APPEAL from and CERTIFIED by the Court of Appeals for Butler County, No. CA2008-02-044, 2009-Ohio-551.

_____

SYLLABUS OF THE COURT

In an employee-initiated action to enforce the prevailing-wage law, the penalties set forth in R.C. 4115.10(A) are mandatory penalties that must be imposed against a party found to have violated the prevailing-wage law if the violation has not resulted from the exceptions specified in R.C. 4115.13(C).

_____

CUPP, J.

{¶ 1} We are asked to determine whether, in an employee-initiated enforcement action, the penalties set forth in R.C. 4115.10(A) are mandatory penalties that must be imposed against a party found to have violated the prevailing-wage law if the violation has not resulted from the exceptions specified in R.C. 4115.13(C). We conclude that the penalties in the foregoing circumstance are mandatory. Accordingly, we reverse the court of appeals' judgment and remand this matter to the trial court for further proceedings.

**I**

**{¶ 2}** Monarch Construction Company, appellee, a general contractor, entered into a contract with Miami University to build student housing. Monarch subsequently contracted with Don Salyers Masonry, Inc. ("Salyers") to work on the project, which was a public improvement. Because of that status, Monarch and Salyers were required to pay their employees the wages determined pursuant to R.C. Chapter 4115.

**{¶ 3}** After an investigation, the Department of Commerce issued an initial determination that Salyers had underpaid employees and that Salyers and Monarch were liable for $368,266.34 in back wages and $368,266.34 in penalties. The department notified Monarch of the result by sending it a copy of the determination, which was Monarch's first notice of the investigation.

**{¶ 4}** Plaintiffs, 36 underpaid employees who decided not to assign their claims to the Department of Commerce for collection, filed suit on February 21, 2006, under R.C. 4115.10(A). Before trial, Miami University was dismissed from the case on its motion, and the court entered a default judgment against Salyers.

**{¶ 5}** After a bench trial, the court found Monarch liable for back pay but denied the plaintiffs' request to penalize Monarch an additional 25 percent of the back wages it owed, as set forth in R.C. 4115.10(A). The court held that the 25 percent penalty was discretionary and that because Monarch had cooperated as soon as it received notice of Salyers's violation, the penalty was not warranted. The court also refused to impose a penalty equal to 75 percent of the back wages owed, to be paid to the director of commerce. The court reasoned that this penalty was also discretionary and that the circumstances of the case did not warrant it.

**{¶ 6}** The appellate court affirmed. We acknowledged a certified conflict and accepted review under our discretionary jurisdiction. 121 Ohio St.3d 1497, 2009-Ohio-2511, 907 N.E.2d 321; 121 Ohio St.3d 1500, 2009-Ohio-2511,

907 N.E.2d 324.  Appellants are five of the original underpaid employees: Doug Bergman, Shawn Adams, Ricky Smith, Scott Brackett, and Andrew Sykes.

## II

**{¶ 7}**   The issue in this case involves the statutory interpretation of R.C. 4115.10(A).[1]   This statute provides: "No person, firm, corporation, or public authority that constructs a public improvement * * * shall violate the wage provisions of sections 4115.03 to 4115.16 of the Revised Code * * *.   Any employee upon any public improvement, except an employee to whom or on behalf of whom restitution is made pursuant to division (C) of section 4115.13 of the Revised Code, who is paid less than the fixed rate of wages applicable thereto may recover from such person, firm, corporation, or public authority * * * the difference between the fixed rate of wages and the amount paid to the employee and in addition thereto a sum equal to twenty-five per cent of that difference. The person, firm, corporation, or public authority who fails to pay the rate of wages so fixed also shall pay a penalty to the director of seventy-five per cent of the difference between the fixed rate of wages and the amount paid to the employees on the public improvement."

**{¶ 8}**   Based on the language of R.C. 4115.10(A), appellants claim that the appellate court erred when it affirmed the trial court's decision not to award them an additional 25 percent penalty on the amount of the underpaid wages. They contend that the 25 percent penalty is required by R.C. 4115.10(A).   They also assert that the appellate court erred when it affirmed the trial court's decision not to require Monarch to pay a 75 percent penalty on the amount of the underpaid wages to the director of commerce.  Upon consideration of the merits argued by the parties, we agree that the appellate court misconstrued the statute.

---

1.  When we accepted this discretionary appeal, we accepted three propositions of law.  The second proposition of law reflects the penalty issue presented in the conflict certification. Upon consideration of this matter, and our resolution of the conflict and its corresponding proposition of law, we dismiss the first and third propositions of law as having been improvidently accepted.

**III**

**{¶ 9}** A court's paramount concern in construing a statute is the intent of the legislature. *State ex rel. Musial v. N. Olmsted*, 106 Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, ¶ 23. In this regard, "it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used" and to read those words and phrases in context according to the rules of grammar and common usage. *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus; R.C. 1.42.

**{¶ 10}** We have previously stated that the legislative intent of the prevailing-wage law in R.C. Chapter 4115 is to "provide a comprehensive, uniform framework for, *inter alia*, worker rights and remedies vis-a-vis private contractors, sub-contractors and materialmen engaged in the construction of public improvements in this state." *State ex rel. Evans v. Moore* (1982), 69 Ohio St.2d 88, 91, 23 O.O.3d 145, 431 N.E.2d 311 (plurality opinion). "[T]he primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector." Id. To achieve this end, R.C. Chapter 4115 provides to employees who have been denied the prevailing wage a comprehensive statutory procedure of administrative and civil proceedings to ensure an employer's compliance with the prevailing-wage laws. *State ex rel. Harris v. Williams* (1985), 18 Ohio St.3d 198, 200, 18 OBR 263, 480 N.E.2d 471. Supporting the administrative and civil proceedings are statutory deterrents in the form of civil and criminal penalties. *State ex rel. Evans v. Moore*, 69 Ohio St.2d at 91, 23 O.O.3d 145, 431 N.E.2d 311. It is with this primary purpose in mind that we review this matter.

**IV**

**{¶ 11}** The general rule of the prevailing-wage law is that an employer shall not violate the wage provisions of R.C. Chapter 4115 or require an employee

to work for less than the "rate of wages so fixed." R.C. 4115.10(A). If the employer violates this proscription and pays an employee less than the prevailing wage, the employee has several options to recoup his underpayment. The employee can institute an enforcement action under R.C. 4115.10(A) or assign to the director of commerce the right to institute an enforcement action under R.C. 4115.10(B). In the event the employee does not institute an enforcement action or assign his or her rights to the director of commerce within the statutorily specified time, the director then has the obligation to "bring any legal action necessary to collect any amounts owed to employees and the director." R.C. 4115.10(C); see generally *Harris v. Van Hoose* (1990), 49 Ohio St.3d 24, 26-27, 550 N.E.2d 461.[2]

{¶ 12} For the employee-initiated enforcement action under R.C. 4115.10(A), the remedy for the underpayment of wages is plainly set forth: the employee is entitled to "the difference between the fixed rate of wages and the amount paid to the employee and in addition thereto a sum equal to twenty-five per cent of that difference." In addition, the underpaying employer "also shall pay a penalty to the director of seventy-five per cent of the difference between the fixed rate of wages and the amount paid to the employee." Id.

{¶ 13} The appellate court's rationale that the R.C. 4115.10(A) penalties were discretionary was based on its interpretation that the phrase "may recover" gives the trial court discretion to deny recovery to the employee. In this regard, the court stated that "there does not seem to be any clear intent from the legislators that they intended their choice of the word 'may' [in R.C. 4115.10(A)] to actually mean 'shall' or that the 25 percent penalty is anything but discretionary." *Bergman v. Monarch Constr. Co.*, 2009-Ohio-551, ¶ 76.

---

2. An interested party may also file a complaint with the director of commerce alleging prevailing-wage violations. R.C. 4115.16. Proceedings instituted in this manner also implicate the remedies specified in R.C. 4115.03 to 4115.16. Unions and trade associations are "interested parties" for the purposes of R.C. 4115.16. R.C. 4115.03(F).

**{¶ 14}** However, the appellate court misread R.C. 4115.10(A). The phrase "may recover" within R.C. 4115.10(A) pertains to the choice the underpaid employee has to enforce his or her right to recover the underpayment. It vests with the employee the discretion of whether to commence an action for restitution of the underpayment. See R.C. 4115.10(A), (B), and (C). Correspondingly, if the employee chooses to enforce his or her statutory right to recover the unpaid wages, and proves the case, then the statutory penalties follow as a matter of course and are mandatory. R.C. 4115.10(A). This interpretation reflects the legislative intent of R.C. Chapter 4115, *State ex rel. Harris v. Williams*, 18 Ohio St.3d at 200, 18 OBR 263, 480 N.E.2d 471, and gives force and effect to the basic rule contained in R.C. 4115.10(A): an employer shall not violate the prevailing-wage laws or pay an employee "less than the rate of wages so fixed."

**{¶ 15}** To deny an underpaid employee the additional 25 percent penalty is contrary to the language of R.C. 4115.10(A). From its inception, the prevailing-wage law has required employers who violated it to pay a penalty on the amount of the back wages owed. G.C. 17-6.[3] The only variation through the years has been to whom the penalty is paid. Initially, the penalty was a payment of 100 percent of the back wages to the underpaid employee. Id. In 1994, the terms of the penalty were altered, but to change only the allocation of the penalty: it was to be apportioned between the underpaid employee and the director of commerce, in an attempt to fund a newly created penalty-enforcement fund. R.C. 4115.10(A); 1994 Am.Sub.H.B. No. 350, 145 Ohio Laws, Part III, 5572, 5575.

---

3. {¶ a} As it was originally enacted in 1931, the penalty section read:

{¶ b} "Any contractor or sub-contractor who shall violate the wage provisions of such contract, or who shall suffer, permit or require any employee to work for less than the rate of wages so fixed, shall be fined not less than $50.00 or more than $500.00. Any employee upon any public improvement who is paid less than the fixed rate of wages applicable thereto may recover from the contractor or sub-contractor the difference between the fixed rate of wages and the amount paid to him, and in addition thereto a penalty equal in amount to such difference." G.C. 17-6, 1931 H.B. No. 3, Section 4, 114 Ohio Laws 117, eff. July 27, 1931.

**{¶ 16}** The statute is also clear in its direction with regard to the 75 percent penalty: it shall be paid to the director of commerce, and it is used for enforcement of the prevailing-wage laws. R.C. 4115.10(A). A basic rule of statutory construction is that "shall" is "construed as mandatory unless there appears a clear and unequivocal legislative intent" otherwise. *Dorrian v. Scioto Conservancy Dist.* (1971)*,* 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus; R.C. 1.42 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage"). In this case, the "clear and unequivocal legislative intent" as expressed in the statute is that the 75 percent penalty is to be paid whenever the director of commerce determines that there has been a prevailing-wage underpayment and the determination becomes final.

**{¶ 17}** Finally, within the prevailing-wage legislation, there is only one exception to the payment of the penalties. According to R.C. 4115.13(C), when the director of commerce finds that a wage underpayment is the result of a misinterpretation of the prevailing-wage statutes or an erroneous preparation of the payroll documents, provided restitution of the underpayment is made, no further proceedings will occur and no penalties are assessed. Because this provision does not apply to Monarch in this case, there is no authority for the mandatory penalty to be waived.

**V**

**{¶ 18}** We hold that in an employee-initiated action to enforce the prevailing-wage law, the penalties set forth in R.C. 4115.10(A) are mandatory penalties that must be imposed against a party found to have violated the prevailing-wage statutes if the violation has not resulted from the exceptions specified in R.C. 4115.13(C).

**{¶ 19}** Based on the foregoing, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

MOYER, C.J., and PFEIFER, O'CONNOR, and LANZINGER, JJ., concur.

LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 20}** Because I believe that the 25 percent penalty set forth in R.C. 4115.10(A) is discretionary in an employee-initiated action to enforce the prevailing-wage law and that the employee is not entitled to recover the 75 percent penalty that is intended for the director of commerce, I respectfully dissent.

**{¶ 21}** The plaintiffs filed this action to recover unpaid prevailing wages from their employer, Don Salyers Masonry, Inc. ("Salyers"), for work performed on a public improvement project at Miami University. Salyers was a subcontractor hired by Monarch Construction Company, the general contractor. Both Monarch and Miami University were also named defendants. The case arose after the Ohio Department of Commerce conducted an investigation into whether Salyers had paid its employees the prevailing-wage rate on the project. The department eventually determined that Salyers had violated Ohio's prevailing-wage law. On December 12, 2005, the department notified Salyers and Monarch of the deficiencies. This was the first that Monarch knew of the investigation that had begun months earlier.

**{¶ 22}** The trial court dismissed Miami University per Civ.R. 12(B)(6) and issued a default judgment against Salyers. Following a bench trial, the court ordered Monarch to pay the plaintiffs the back wages, less an amount for fringe

benefits already paid. However, the trial court refused to award the penalties under R.C. 4115.10(A), on the basis that they were discretionary and not warranted in the case. The court explained its reasoning: "[T]he testimony at trial and the evidence before this Court indicates [sic] that Salyers repeatedly assured Monarch that [it] was paying the prevailing wage to its employees. In addition, Monarch reviewed Salyers' payroll records, and confirmed the correct prevailing wage rate with Miami University. Finally, once Monarch learned of the investigation and determination against Salyers, it cooperated with the [department], and took all steps necessary to ensure the [department] had all the correct documentation."

{¶ 23} The court of appeals affirmed. The appellate court relied on the plain language of R.C. 4115.10(A), which states that "the employees 'may recover' a penalty equal to 25 percent of wages owed," and applying well-established rules of statutory construction, the appellate court construed "may recover" as being permissive or discretionary. 2009-Ohio-551, ¶ 74. Thus, the appellate court held that the trial court had discretion to deny the penalty.

{¶ 24} I agree that the plain language of the statute and the General Assembly's repeated use of both "may" and "shall" throughout the prevailing-wage statutes supports the appellate court's interpretation. The sentence at issue in R.C. 4115.10(A) provides that an employee who is paid less than the applicable fixed rate of wages on the project "*may recover * * * the difference between the fixed rate of wages and the amount paid to the employee and in addition thereto a sum equal to twenty-five per cent* of that difference." (Emphasis added.) Later in that section, in discussing remedies, R.C. 4115.10(A) also states that the employee "*may file*" to recover. The majority rejects the appellate court's plain reading of the statute in favor of an interpretation that "may recover" "pertains to the choice the underpaid employee has to enforce his right to recover the

underpayment." However, there is nothing in the statute that connects the verb "may recover" to the employee's choices of how to collect unpaid wages.

{¶ 25} I agree that an employee does have a choice either to file suit to recover for a prevailing-wage violation, R.C. 4115.10(A), or to assign the claim to the Department of Commerce to file, R.C. 4115.10(B). The employer also may do nothing, in which case the department may bring legal action to collect the wages. R.C. 4115.10(C). However, there is no language in the statute that supports the majority's interpretation that "may recover" pertains only to the employee's choice of methods to recover wages, which is addressed later in the statute.

{¶ 26} We have long held that "[i]n statutory construction, the word 'may' shall be construed as permissive and the word 'shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that they receive a construction other than their ordinary usage." *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus; R.C. 1.42. The General Assembly's use of the word "may" before the word "recover" indicates that recovery is discretionary. Also, "may recover" must be read in the context of the entire sentence, which pertains to *what* the employee *may* recover, not how to recover.

{¶ 27} Furthermore, the General Assembly has used both "may" and "shall" throughout the prevailing-wage statutory scheme. For example, R.C. 4115.10(B) provides that an employee *may* file a complaint with the director and that the director *shall* take an assignment of a claim for the assigning employee. R.C. 4115.16(D) provides that a court *shall* award attorney fees and costs to the prevailing party when there is a violation but *may* award costs and fees to the prevailing party if the court finds that there was no violation and that the action was unreasonable or lacked foundation. I believe that the General Assembly clearly intended that these terms be given their ordinary meaning. Thus, I believe

10

it is contrary to the plain language of the statute that the employee's recovery of a 25 percent penalty is mandatory.

{¶ 28} In addition, I do not believe that the plaintiff in an employee-initiated action is entitled to recover the 75 percent penalty that is paid to the director once there has been a final determination of a prevailing-wage underpayment. R.C. 4115.10(A) provides that the person or entity that fails to pay the prevailing wage "shall pay a penalty *to the director*." (Emphasis added.) "The director shall bring any legal action necessary to collect any amounts owed to the employees and the director." R.C. 4115.10(C). The statute, however, has no similar provision authorizing the employee to pursue and recover the amounts owed to the employee and the penalty that is payable to the director. And as a practical matter, if the employee is entitled to recover the 75 percent, is it paid to the plaintiff/employee, who then becomes responsible for giving it to the director, or must it be paid directly to the nonparty director? For these reasons, I do not believe that the employee is the real party in interest and entitled to pursue the penalty that is payable to the director.

{¶ 29} In conclusion, when Monarch questioned whether Salyers was complying with prevailing-wage laws, the general contractor was assured by both Miami University and Salyers that it was. Months later, when Monarch learned of the department's determination, it obtained wage and fringe-benefit information from Salyers's files for the department. Monarch cooperated with the department in settlement negotiations involving employees who chose not to file suit. I believe that these efforts demonstrate why the General Assembly intended for the penalty against the employer to be discretionary.

{¶ 30} Consequently, I respectfully dissent and would affirm the judgment of the court of appeals.

O'DONNELL, J., concurs in the foregoing opinion.

_____

11

Cosme, D'Angelo & Szollosi Co., L.P.A., and Joseph M. D'Angelo, for appellants.

Taft, Stettinius & Hollister, L.L.P., Gregory Parker Rogers, and Matthew R. Byrne, for appellee.

Benesch, Friedlander, Coplan & Aranoff, L.L.P., N. Victor Goodman, and Mark D. Tucker, urging reversal for amicus curiae, Ohio State Building & Construction Trades Council.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Alexandra T. Schimmer, Chief Deputy Solicitor General, and Susan M. Sullivan, Dan E. Belville, and Lindsay M. Sestile, Assistant Attorneys General, urging reversal for amicus curiae state of Ohio.

Ross, Brittain & Schonberg Co., L.P.A., Alan G. Ross, and Nick A. Nykulak, urging affirmance for amici curiae ABC of Ohio, Inc., and Northern Ohio Chapter of Associated Builders & Contractors, Inc.

Schottenstein, Zox & Dunn and Roger L. Sabo, urging affirmance for amici curiae Associated General Contractors of Ohio and Allied Construction Industries.

———————————