[Cite as *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Fitzenrider, Inc.*, 2012-Ohio-4655.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION
LOCAL UNION NO. 33,

      PLAINTIFF-APPELLANT/              CASE NO.  7-11-19
      CROSS-APPELLEE,

      v.

FITZENRIDER, INC.,                     **O P I N I O N**

      DEFENDANT-APPELLEE/
      CROSS-APPELLANT.

Appeal from Henry County Common Pleas Court
Trial Court No. 05 CV 109

Judgment Affirmed

Date of Decision:   October 9, 2012

APPEARANCES:

    *Joseph M. D'Angelo*  for Appellant/Cross-Appellee

    *Alan G. Ross and Nick A. Nykulak*  for Appellee/Cross-Appellant

**SHAW, P.J.**

{¶1} Plaintiff-appellant-cross-appellee Sheet Metal Workers' International Association, Local Union No. 33 ("Local 33") appeals the October 12, 2011 judgment of the Henry County Common Pleas Court granting summary judgment in favor of defendant Fitzenrider, Inc. ("Fitzenrider"). Defendant-appellee-cross-appellant Fitzenrider also appeals the October 12, 2011 judgment of the Henry County Common Pleas Court denying Fitzenrider's request for attorney's fees.

{¶2} The facts relevant to this appeal are as follows. Fitzenrider is a small mechanical construction contractor located in Defiance County, Ohio that performs heating, plumbing, ventilation and air conditioning work for residential and commercial customers.[1] Fitzenrider was one of multiple contractors that bid on a construction contract for a public project known as the Henry County Health Department Alteration Project ("the project"). The project exceeded the statutory threshold to require compliance with the prevailing wage law (R.C. 4115.03 *et. seq.*).

{¶3} Ultimately Fitzenrider's bid was selected and Fitzenrider was awarded a contract to work on the project. Fitzenrider's work commenced in March of 2004 and was completed in September of 2004. In total, five employees worked on the project.

---

[1] This is how Fitzenrider described itself in its motion for summary judgment, and in its brief to this court. (Appe. Br. pg. 4).

{¶4} On August 23, 2005, Local 33 filed a complaint to audit Fitzenrider's compliance with Ohio prevailing wage law pursuant to R.C. 4115.16(B). Local 33 represented members who worked for unsuccessful bidders on the project giving it standing as an interested party pursuant to the statute.

{¶5} On October 18, 2005, Fitzenrider filed a Civ.R. 12(E) motion for a more definite statement arguing that Local 33's allegations were vague.

{¶6} On January 3, 2006, Local 33 filed an amended complaint alleging multiple more specific violations of various provisions of Ohio's prevailing wage law. Specifically, Local 33 claimed, *inter alia*, that Fitzenrider did not properly prepare certified payroll reports compliant with the disclosure requirements, that Fitzenrider improperly calculated its fringe benefit credit and thereby paid its employees less than the applicable prevailing wage, that Fitzenrider paid its employees according to the wrong trade classification resulting in underpayments, that Fitzenrider compensated offsite employees at a lower rate than the prevailing wage for the project, and that Fitzenrider did not maintain adequate records.

{¶7} On June 11, 2008, Fitzenrider filed a motion for a partial stay of proceedings as the Ohio Supreme Court accepted review of another prevailing wage case dealing with some of the issues in this case filed by Local 33.

{¶8} On August 11, 2008, the trial court granted the partial stay and requested that the parties file summary judgment motions on the parties' remaining claims that were not stayed by the court.

{¶9} On January 22, 2009, Local 33 filed a motion for partial summary judgment. In its motion, Local 33 argued that Fitzenrider: (1) violated R.C. 4115.071(C) by not listing its employees' social security numbers or the total hours worked on all public and private jobs per week on its certified payroll reports, (2) violated R.C. 4115.05 by failing to identify the prevailing wage coordinator for the project on the individual written notices provided to employees; (3) violated R.C. 4115.07 because it did not re-post the schedule of wages at the job site, (4) violated R.C. 4115.07 by failing to maintain adequate records of its prevailing wage compliance, (5) improperly took a fringe benefit credit for a bonus, (6) failed to substantiate its other fringe benefits credits such as pension contributions, vacations and holidays paid to employees, (7) miscalculated its fringe benefit credits, (8) otherwise underpaid employees, (9) misclassified employees under incorrect trade classifications, and (10) failed to pay employees for offsite fabrication work done in Fitzenrider's shop. In addition, Local 33 requested attorney's fees and costs expended in the matter pursuant to R.C. 4115.16(D).

{¶10} On March 11, 2009, Fitzenrider filed its response to Local 33's motion for summary judgment and Fitzenrider filed its own motion for partial summary judgment asserting that the facts were not in dispute, and that Fitzenrider was in compliance with prevailing wage law, entitling Fitzenrider to summary judgment. Fitzenrider also requested attorney's fees and costs pursuant to R.C. 4115.16(D).

{¶11} On June 19, 2009, Fitzenrider filed a motion to lift the partial stay, informing the trial court that the Ohio Supreme Court had rendered a decision on the contested issue for which the court had granted a partial stay. The Ohio Supreme Court held in *Sheet Metal Workers Union Local No. 33 v. Gene's Refrigeration*, 122 Ohio St.3d 248, 2009-Ohio-2747, that the offsite fabrication of materials to be used on a public improvement projects was not subject to the requirements of Ohio's prevailing wage law.

{¶12} On July 30, 2009, the trial court lifted the partial stay and granted Fitzenrider's judgment as a matter of law with regard to all of Local 33's offsite fabrication claims against Fitzenrider.

{¶13} On August 25, 2011, the trial court issued an opinion awarding summary judgment to Fitzenrider on all of Local 33's remaining claims. In that opinion the court also denied Fitzenrider's request for attorney's fees finding that

Local 33's case was not unreasonable or without foundation at the time it was filed.

{¶14} On October 12, 2011, the trial court entered its final judgment entry memorializing what the court held in its August 25, 2011 opinion. It is from this judgment that both Local 33 and Fitzenrider appeal.

{¶15} Local 33 asserts the following assignments of error for our review based upon the October 12, 2011 judgment.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED A CONTRACTOR THAT ELECTED TO ANNUALIZE ITS FRINGE BENEFIT CREDIT CALCULATIONS TO DEVIATE FROM THE 2080 FORMULA MANDATED BY OHIO ADM. CODE 4101:9-4-06(E).**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD THAT FITZENRIDER'S UNDERPAYMENT WAS NOT A VIOLATION OF R.C. 4115.10(A).**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD THAT FITZENRIDER'S INCOMPLETE CERTIFIED PAYROLL REPORTS DID NOT VIOLATE R.C. 4115.071(C).**

**ASSIGNMENT OF ERROR 4**
**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD THAT FITZENRIDER'S FAILURE TO POST THE REQUISITE PREVAILING WAGE RATE NOTIFICATION AT THE JOB SITE DID NOT VIOLATE OHIO ADM. CODE 4101:9-4-13(A)(3).**

{¶16} Fitzenrider asserts the following assignment of error from the October 12, 2011 judgment.

**FITZENRIDER'S ASSIGNMENT OF ERROR**
**THE TRIAL COUT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY DENYING FITZENRIDER'S REQUEST FOR ATTORNEY'S FEES AND COSTS PURSUANT TO R.C. 4115.16(D).**

{¶17} In the interest of clarity, we elect to address some of the assignments of error together, and some of the assignments of error out of the order in which they were raised.

*Standard of Review*

{¶18} Initially, we note that an appellate court reviews a grant of summary judgment *de novo*, without any deference to the trial court. *Sheely v. Sheely*, 3d. Dist. No. 2-10-38, 2012-Ohio-43, ¶ 17, citing *Conley-Slowinski v. Superior Spinning & Stamping Co.*, 128 Ohio App.3d 360, 363 (6th Dist.1998). A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56; *Horton v.*

*Harwick Chem. Corp.,* 73 Ohio St.3d 679, 1995-Ohio-286, at paragraph three of the syllabus.

**{¶19}** The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988) at syllabus. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107. Once the moving party demonstrates that it is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. *See* Civ.R. 56(E).

**{¶20}** In ruling on a summary judgment motion, a court is not permitted to weigh evidence or choose among reasonable inferences, rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. *Jacobs v. Racevskis*, 105 Ohio App.3d 1, 7 (2nd Dist.1995). Additionally, Civ.R. 56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Local 33's Fourth Assignment of Error*

**{¶21}** In Local 33's fourth assignment of error, Local 33 claims that the trial court erred when the court held that Fitzenrider's failure to post the requisite prevailing wage rate notification at the job site did not violate Ohio Administrative Code provision 4101:9-4-13(A)(3). Specifically Local 33 argues that *every* contractor on the job site was required to post the prevailing wage notification, and that although the wage rates were posted, Fitzenrider did not itself post the wage rates and thereby was in violation of the O.A.C.

**{¶22}** The language of the governing statute, R.C. 4115.07, reads in pertinent part,

> **[t]here shall be posted in a prominent and accessible place on the site of the work a legible statement of the schedule of wage rates specified in the contract to the various classifications of laborers, workers, and mechanics employed, said statement to remain posted during the life of each contract.**

**{¶23}** The corresponding administrative provision, O.A.C. 4101:9-4-13(A)(3), reads,

> **(A) Every contractor and subcontractor on a public improvement project shall:**
>
> **\* \* \***
>
> **(3) Post in a prominent and accessible place on the site of the work a legible statement of the schedule of wage rates specified in the contract for the various occupations of laborers, workmen, and mechanics employed. The notice must remain posted during the life of the contract and must be supplemented**

**in its entirety whenever new wage rate schedules are issued by the department. The schedule must also state the name, address, and phone number of the prevailing wage coordinator.**

{¶24} In this case, there is no factual dispute as to what occurred at the job site. Tom Hurst, the Project Superintendent for construction manager Rupp Rosebrock, Inc. posted all of the schedules of wages applicable to the project as well as providing employees who worked on the project the identity of the prevailing wage coordinator. (Doc. 45, Ex. A, Jacob Aff.); (Doc. 45, Ex. B., Layman Aff.). John Jacob, president of Fitzenrider, and his employee, Donald Layman, both filed affidavits attesting to this fact. (*Id.*); (*Id.*) Thus while Fitzenrider did not itself post the wage schedules, the wage schedules were posted at the job site.

{¶25} Although Local 33 argues that a plain reading of O.A.C. 4101:9-4-13(A)(3) would require *every* contractor to individually post the wage rates, when reading the statute and the regulation, nothing specifically says that an employee of the contractor itself must post the rates. The statute and the regulation do not prevent Fitzenrider from directing someone to post the rates nor does it require Fitzenrider to duplicate the rates that were already posted by the construction manager. The statute and the regulation both require that the wage tables be posted, and they were posted here as attested to by John Jacob and his employee Donald Layman.

{¶26} Based upon the foregoing we find that there is no genuine issue of material fact and that Fitzenrider is entitled to judgment as a matter of law. Therefore summary judgment was properly awarded by the trial court to Fitzenrider on this issue. Accordingly Local 33's fourth assignment of error is overruled.

*Local 33's Third Assignment of Error*

{¶27} In Local 33's third assignment of error, Local 33 alleges that the trial court erred when it concluded that Fitzenrider's certified payroll reports did not violate R.C. 4115.071(C). Specifically Local 33 argues that Fitzenrider was required under the Ohio Revised Code to put each employee's social security number on the payroll reports and that Fitzenrider was required to list the total hours worked on all projects for each week on the payroll reports.

{¶28} R.C. 4115.071(C) sets forth the items that must be enumerated on an employer's certified payroll reports. In pertinent part, R.C. 4115.07(C) reads,

> **\* \* \* The contractor or subcontractor shall also deliver to the prevailing wage coordinator a certified copy of the contractor's or subcontractor's payroll, within two weeks after the initial pay date, and supplemental reports for each month thereafter which shall exhibit for each employee paid any wages, the employee's name, current address, social security number, number of hours worked during each day of the pay periods covered and the total for each week, the employee's hourly rate of pay, the employee's job classification, fringe payments, and deductions from the employee's wages. If the life of the contract is expected to be no more than four months from the beginning of performance by**

**the contractor or subcontractor, such supplemental reports shall be filed each week after the initial report. The certification of each payroll shall be executed by the contractor, subcontractor, or duly appointed agent thereof and shall recite that the payroll is correct and complete and that the wage rates shown are not less than those required by the contract.**

{¶29} It is undisputed in this case that Fitzenrider did not include each employee's social security number or the hours worked in the week on other projects on the certified payroll reports. Furthermore, it is undisputed that Fitzenrider maintained certified payroll reports which were provided to the Ohio Department of Commerce with a signed "statement of compliance." (Doc. 45, Ex. A-2).

{¶30} In *Vaughn Industries, Inc. v. Dimech Services*, 167 Ohio App.3d 634 (6th Dist.2006) (hereinafter "*Vaughn* 1") and *IBEW Local 8 v. Vaughn Industries, Inc.*, 6th Dist. No. WD-07-026, 2008-Ohio-2992 (hereinafter "*Vaughn* 2"), the Sixth District Court of appeals addressed the issue of whether failing to include one of the enumerated items in R.C. 4115.071(C) in a payroll report was a violation of the statute's requirements. Ultimately, in the *Vaughn* cases, the Sixth District found that the contractor's inclusion of a signed "statement of compliance" attesting that the contractor "had paid or would be paying the fringe benefits required under the contract" with the payroll reports was sufficient to satisfy the revised code when a contractor neglected to include one of the enumerated items of R.C. 4115.071(C). *Vaughn* 1, at ¶ 28.

{¶31} In this case, Fitzenrider submitted "statements of compliance" with its payroll reports containing the following language:

**I, _____ do certify under penalty of perjury:**

**1)     That all of the information in this report is true and correct.**
**2)     That I pay or supervise the payment of the persons employed by Fitzenrider, Inc, \* \* \* that \* \* \* all persons employed on said project have been paid the full weekly wages earned, that no rebates have been or will be made either directly or indirectly from the full wages earned by any person other than permissible deductions, as described below:**

**FICA (Social Security), Medicare, Federal Income Taxes, State Income Taxes, State Disability (SDI), Court Ordered Wage Attachments, 401K Plans**

**3)     That any payrolls otherwise under this contract required to be submitted for the above period are correct and complete; that the wage rate for laborers or mechanics contained therein are not less than the applicable wage rates contained in any wage determination incorporated into the contract; that the classifications set forth therein for each laborer or mechanic conform with the work he performed.**
**4)     That any apprentices employed in the above period are duly registered in a bona fide apprenticeship program registered with a state apprenticeship agency.**
**5)     That:**
**a)     WHERE     FRINGE     BENEFITS     ARE     PAID     TO APPROVED PLANS, FUNDS, OR PROGRAMS**

**In addition to the basic hourly wage rates paid to each laborer or mechanic listed in the above referenced payroll, payments of fringe benefits as listed in the contract have been or will be made to the appropriate programs for the benefit of such employees.**

**b)     WHERE FRINGE BENEFITS ARE PAID IN CASH**
**Each laborer or mechanic listed in the above referenced payroll has been paid as indicated on the payroll, an amount not less**

**than the sum of the applicable basic hourly wage rate plus the amount of the required fringe benefits as listed in the contract * * *[.]**

(Doc. 45, Ex. A-2).

{¶32} The "statements of compliance" submitted by Fitzenrider along with the payroll reports contain exactly the same language cited in both *Vaughn* cases under "5) a)" above. The statements of compliance were each signed by John Jacob, Fitzenrider's president. (*Id.*)

{¶33} The trial court, relying on the *Vaughn* cases, held that Fitzenrider's inclusion of a statement of compliance was sufficient to satisfy R.C. 4115.071(C) even when Fitzenrider failed to specify one of the enumerated items. Although the item not listed on the payroll reports in *Vaughn* 1 was fringe benefit payments, we find the *Vaughn* analysis persuasive and applicable to the omitted items here.

{¶34} Moreover, we are mindful of the primary purpose of Ohio's prevailing wage law, which was enacted to "support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private sector." *Harris v. Van Hoose* 49 Ohio St.3d 24, 26 (1990) quoting *State ex rel. Evans v. Moore*, 69 Ohio St.2d 88, 91 (1982). Here, the employees' social security numbers and the total hours worked weekly on the projects were otherwise submitted to the Ohio Department of Commerce or to the prevailing

wage coordinator and were thus available were they an absolute necessity. (Doc. 45, Exs. A-5, A-8).

**{¶35}** For all of the foregoing reasons we find that summary judgment was properly granted to Fitzenrider on this issue and Local 33's third assignment of error is overruled.

*Local 33's First and Second Assignments of Error*

**{¶36}** In Local 33's first and second assignments of error, Local 33 argues that the trial court erred by allowing Fitzenrider to "deviate" from the formula for calculating fringe benefit credits in Ohio Administrative Code 4101:9-4-06(E) and that such a deviation resulted in an underpayment that the trial court should have found violated R.C. 4115.10(A). Specifically, Local 33 argues that according to the Ohio Administrative Code, Fitzenrider was required to use the denominator of 2080 as the default 'hours worked' in the absence of the *actual* number of hours worked.

**{¶37}** Ohio Administrative Code 4101:9-4-06, which relates to calculating fringe benefit credits, reads as follows:

> **(A)  It is the duty of each employer to calculate the amount of credit it seeks for fringe benefits in accordance with Chapter 4101:9-4 of the Administrative Code.**

> **(B)  Each employer shall submit a certified payroll report to the prevailing wage coordinator. This report shall include at a minimum the basic hourly rate, calculated hourly rate of fringe benefits credited, all permissible payroll deductions.**

**(C) The employer shall submit detailed calculations showing the calculations used in determining any of the information contained on the certified payroll report upon request by commerce.**

**(D) Where the employer provides commerce with substantiating documentation concerning the amount contributed to the fringe benefit and the total number of hours worked by the employee on all projects deemed relevant by the director for the purposes of this calculation, hourly fringe benefit credit shall be calculated by dividing the total contribution of the employer applicable to the employee by the total number of hours worked by the employee.**

**(E) Where the employer provides commerce with substantiating documentation concerning only the amount contributed to the fringe benefit, hourly fringe benefit credit shall be calculated by dividing the total yearly contribution by 2080.**

**(F) Commerce may reject any credits sought by an employer which are not substantiated by adequate records.**

**(G) Falsification of any information provided to commerce pursuant to this rule is a violation of section 2921.13 of the Revised Code.**

{¶38} Revised code 4115.03(E) defines prevailing wages as the sum of the following:

**(1) The basic hourly rate of pay;**

**(2) The rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person pursuant to a fund, plan, or program;**

**(3) The rate of costs to the contractor or subcontractor which may be reasonably anticipated in providing the following fringe**

**benefits to laborers and mechanics pursuant to an enforceable commitment to carry out a financially responsible plan or program which was communicated in writing to the laborers and mechanics affected:**

**(a)   Medical or hospital care or insurance to provide such;**

**(b)   Pensions on retirement or death or insurance to provide such;**

**(c)   Compensation for injuries or illnesses resulting from occupational activities if it is in addition to that coverage required by Chapters 4121. and 4123. of the Revised Code;**

**(d)   Supplemental unemployment benefits that are in addition to those required by Chapter 4141. of the Revised Code;**

**(e)   Life insurance;**

**(f)   Disability and sickness insurance;**

**(g)   Accident insurance;**

**(h)   Vacation and holiday pay;**

**(i)   Defraying of costs for apprenticeship or other similar training programs which are beneficial only to the laborers and mechanics affected;**

**(j)   Other bona fide fringe benefits.**

**None of the benefits enumerated in division (E)(3) of this section may be considered in the determination of prevailing wages if federal, state, or local law requires contractors or subcontractors to provide any of such benefits.**

{¶39} In this case, it is undisputed that in calculating fringe benefit credit, Fitzenrider used the divisors of 1908 and 1948.  Fitzenrider came to these figures

by beginning with the idea that employees would work 52 weeks per year at 40 hours per week for a total of 2080 hours. Then, Fitzenrider subtracted from the 2080 hours the number of hours that employees would be on paid holiday or on paid vacation. Fitzenrider's employees received 52 hours of paid holidays each year, and either 80 or 120 hours of paid vacation depending upon the employees' hire date and years of service. Adding the hours the employees would not be working while on holiday to hours the employees would be on paid vacation there were either 132 hours or 172 hours per year that a given employee would not be working. Fitzenrider took these numbers and subtracted them from the base number of hours, 2080, to get the divisors of 1948 and 1908—Fitzenrider's estimated amount of hours worked for each employee for the given year. Fitzenrider then used these two numbers as the divisors for calculating its fringe benefits credit.

{¶40} Local 33 argues that pursuant to the Ohio Administrative Code, Fitzenrider either had to use the number of hours actually worked by the employees (O.A.C. 4101:9-4-06(D)) *or* what Local 33 claims is the default divisor of 2080 hours (O.A.C. 4101:9-4-06(E)). Local 33 claims that Ohio Administrative Code provision 4101:9-4-06 cited above does not allow for Fitzenrider's estimation of total hours worked for the employees.

{¶41} An argument similar to Local 33's claim was made in *Vaughn* 2, *supra*. In *Vaughn* 2, the Sixth District Court of Appeals conducted the following analysis:

> * * * IBEW claims that this court must adopt one of its methods of calculation per Ohio Adm.Code 4101:9-4-06(D) or Ohio Adm.Code 4101:9-4-06(E). We disagree.
>
> To repeat, in IBEW I, this court determined that to be in "compliance with Ohio's Prevailing Wage Law, and unless otherwise modified by the administrator, fringe benefits credit must be calculated on the hour-for hour-basis by dividing the total contribution to fringe benefits on public projects by the total number of hours worked by the employee on public projects." A thorough review of the trial testimony given by Vaughn's President Matthew Plotts, and Chief Financial Officer, Jennifer Smalley, as well as the voluminous records related to the calculation of the fringe benefits credit that were entered into evidence at trial, reveals some competent credible evidence that this credit was calculated properly.

*Vaughn* 2, 2008-Ohio-2992 ¶¶ 44-45. The Sixth District's analysis illustrates that contrary to Local 33's position, there are not *only* two permissible methods of calculating fringe benefit credits pursuant to the Ohio Administrative Code.

{¶42} Moreover, in R.C. 4115.03(E)(3), *supra*, the legislature inserted language that the rate of costs "may be reasonably anticipated." Reading the corresponding O.A.C. provision, 4101:9-4-06, with the idea that costs may be "reasonably anticipated" and factoring in the Sixth District's interpretation in *Vaughn* 2 that there are more than the two methods for calculating fringe benefit

credits, we find that Fitzenrider was not required to use only the two methods cited by Local 33 if it could "reasonably anticipate" its costs.

{¶43} The record demonstrates just such a reasonable anticipation. Here we have a detailed accounting for how Fitzenrider calculated its fringe benefit credits and came up with the divisors of 1908 and 1948. These calculations were based on actual hours the employees would work in the year after their vacation and holiday hours were subtracted from the base amount of 2080. Accordingly, we find no error in Fitzenrider's calculations and therefore Fitzenrider was entitled to summary judgment. Thus Local 33's first assignment of error is overruled.

{¶44} As we find no error in Fitzenrider's calculations, we do not find that there was any underpayment in this case as alleged by Local 33 in its second assignment of error. Thus Local 33's second assignment of error is overruled and we find that summary judgment was properly granted to Fitzenrider.

{¶45} Accordingly, Local 33's first and second assignments of error are overruled.

*Fitzenrider's First Assignment of Error*

{¶46} In Fitzenrider's sole assignment of error Fitzenrider argues that the trial court erred in failing to award Fitzenrider attorney's fees. Specifically Fitzenrider argues that Local 33's complaint was unreasonable and without foundation and therefore Fitzenrider was entitled to attorney's fees.

**{¶47}** When a trial court is empowered to award attorneys' fees by statute, the decision to award such fees and the amount of such fees is within the sound discretion of the trial court. *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc*, 23 Ohio App.3d 85, 91 (12th Dist.1985). *See also Bittner v. Tri County Toyota, Inc*, 58 Ohio St.3d 143, 145-146 (1991). That decision will not be overturned absent an abuse of discretion. An abuse of discretion connotes more than an error of law or judgment. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶48}** The statute governing attorney's fees in this case is R.C. 4115.16(D), which reads:

> **(D) Where, pursuant to this section, a court finds a violation of sections 4115.03 to 4115.16 of the Revised Code, the court shall award attorney fees and court costs to the prevailing party. In the event the court finds that no violation has occurred, the court may award court costs and fees to the prevailing party, other than to the director or the public authority, where the court finds the action brought was unreasonable or without foundation, even though not brought in subjective bad faith.**

**{¶49}** In analyzing this issue, the trial court denied Fitzenrider's request for attorney's fees, finding that "none of the cases on which [the court] relied in deciding that there were no violations [by Fitzenrider] were in fact decided when this litigation was commenced. Hence, the Court would fairly conclude that it

-21-

could not find the case was brought without foundation, or that plaintiff acted in bad faith or was unreasonable." (Doc. 57).

{¶50} Our own review of the record and the corresponding law shows that many of the issues raised were novel to this district. Furthermore, as stated by the trial court, many of the cases cited herein were not decided at the inception of this case in August of 2005. Based on this, we cannot find the trial court's decision denying Fitzenrider's request for attorney's fees was arbitrary, unreasonable, or unconscionable. Accordingly Fitzenrider's assignment of error is overruled.

{¶51} For the foregoing reasons the assignments of error raised by Local 33 and the assignment of error raised by Fitzenrider are overruled and the judgment of the Henry County Common Pleas Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**
**/jlr**